### GEORGE HAMILTON

*v.*

### WILLIAM SCULLY.

*Filed at Springfield October 6, 1886.*

1. CONTRACT—*time of performance, when not expressed.* Where a party undertakes to do some particular act the performance of which depends entirely upon himself, and the contract is silent as to the time of performance, the law, without reference to extraordinary circumstances, will imply that it shall be performed within a reasonable time.

2. SAME—*time to perform act, which may qualify or change rights and duties of parties.* Where a party has obligated himself to pay a given sum of money by a future day, which is fixed as the time for full performance, and it is agreed that the sum to be paid may be increased or diminished by the performance of another act left to the option of the parties, the law will require either party to exercise his option, and perform such act, before full payment of the sum named is made. After full payment the party will be held to have waived his right to do the act entitling him to a further sum.

3. The owner of a farm supposed to contain 4141 acres, sold the same at $45 and $50 per acre, the purchase money to be paid as follows: $15,000 on the execution of the contract, $85,000 on the execution and delivery of the deed by May 10, 1877, and the balance, $115,297.40, on or before March 1, 1878, which was to be secured by note and mortgage. It was further provided in the contract, that either party might, at his own expense, survey the land, if he saw fit, to ascertain the number of acres, and if such survey showed the land to contain more acres than the parties supposed, the purchaser should pay the difference, and if it contained less, the amount of the deficit should be deducted from the purchase money or credited upon the note and mortgage. Some seven years after the date of the last payment the vendor had a survey made, and brought suit against the purchaser for an excess shown by the survey: *Held,* that he could not recover, the survey after payment of the last installment being too late.

APPEAL from the Appellate Court for the Third District;— heard in that court on appeal from the Circuit Court of Sangamon county; the Hon. JESSE J. PHILLIPS, Judge, presiding.

Messrs. STUART, EDWARDS & BROWN, for the appellant:

When no time is fixed for the payment of money, it is not the law that the payment is to be made within a reasonable time, but upon demand. *Thomas* v. *Kitcham,* 8 Johns. 189; *Abbott* v. *Douglass,* 1 C. B. 491; *Herrick* v. *Bennett,* 8 Johns. 374; *Gaylord* v. *Vanloan,* 15 Wend. 308; *Cornell* v. *Moulton,* 3 Denio, 12; *Keys* v. *Fenstermaker,* 24 Cal. 329; *Freeman* v. *Roberts,* 15 Ga. 215.

A note payable "whenever the lands in the late purchase in Iowa Territory should be advertised for sale," becomes due whenever any part of those lands were proclaimed for sale. (*Glancy* v. *Elliott,* 14 Ill. 456.) So, here, the money was due whenever the survey was made.

Messrs. BLINN & HOBLITT, for the appellee:

It is a cardinal principle in construing contracts, that they must have a reasonable interpretation, according to the intention of the parties executing them, if the intention can be gathered from the language used. *Wilson* v. *Marlow,* 66 Ill. 385; *Nichols* v. *Mercer,* 44 id. 250; *Tracy* v. *Chicago,* 24 id. 500; *Walker* v. *Douglass,* 70 id. 448; 1 Chitty on Contracts, (4th Am. ed.) 104, 105; *Broadwell* v. *Broadwell,* 1 Gilm. 612.

In giving construction to a contract, the question is, what, by a fair and reasonable interpretation of the words and acts of the parties, was the bargain between them. *Fire Ins Co.* v. *Olcott,* 97 Ill. 440; *Nichols* v. *Mercer,* 44 id. 250; *Fitch* v. *Priest,* 46 id. 226.

It is a universal rule of construction, that whatever may be fairly implied from the terms or language of an instrument, is, in the judgment of law, contained in it. *Rodgers* v. *Kneeland,* 10 Wend. 250; *Baldwin* v. *Humphrey,* 44 N. Y. 614.

13—118 ILL.

Where no time is mentioned in an agreement for the performance of any of its conditions, a reasonable time is to be understood. What is a reasonable time, depends upon the circumstances of each case. Chitty on Contracts, part 3, p. 730; *Cacker* v. *Manf. Co.* 3 Sumn. 530; *Atwood* v. *Cobb*, 16 Pick. 251; *Roberts* v. *Beatty*, 2 Pa. 63; *Phillips* v. *Morrison*, 3 Bibb, 105; *Sawyer* v. *Hammond*, 3 Ship. 40; *Howe* v. *Huntington*, id. 350; *Atkinson* v. *Brown*, 20 Me. 67; *Nudd* v. *Wills*, 11 Wis. 436; *Waterman* v. *Dutton*, 6 id. 264; *Driver* v. *Ford*, 90 Ill. 598.

Mr. JUSTICE MAGRUDER delivered the opinion of the Court:

After the sale of certain tracts of land, a survey developed the fact, that the number of acres in the tracts sold exceeded the number of acres, which the lands were supposed to contain at the time of the sale. This is an action of assumpsit, brought to recover the value of the excess. The question involved depends upon the construction of the contract, hereinafter mentioned. Upon the trial of the cause, without a jury, before the circuit court of Sangamon county, judgment was rendered against defendant below, who is the appellee here, for $3505.54. An appeal was taken to the Appellate Court of the Third District, and, there, the judgment of the circuit court was reversed. The case is brought here by appeal from the judgment of the Appellate Court, reversing that of the circuit court. By the judgment of the Appellate Court, the appellant there, who is the appellee here, recovered his costs of the appellee there, who is the appellant here, and execution was ordered to issue therefor.

On April 17, 1877, George Hamilton, the appellant here, and one James C. Hamilton, who has since deceased, made a contract in writing with William Scully, the appellee here, for the sale to the latter of $4141\frac{34}{100}$ acres of land, in Sangamon county, for $215,297.40, $3787\frac{42}{100}$ acres being sold at $50

per acre, and $353\frac{92}{100}$ acres at $45 per acre. The purchase money was to be paid as follows: $15,000 on the execution of the contract, $85,000 on the execution and delivery of a warranty deed to Scully by the Hamiltons and their wives, "for said land, on the 10th day of May 1877," and the balance, $115,297.40, on or before March 1, 1878. The payment of the $115,297.40 was to be secured by Scully's note, and mortgage upon the premises. By the terms of the agreement, the Hamiltons agreed, "by June 1, 1877," to procure a release of a trust deed, dated March 13, 1875, which they had executed upon the property, "upon said William Scully executing and delivering to said James C. and George Hamilton the note and mortgage, above mentioned, to secure the balance of said money." The Hamiltons were to furnish certain proofs, in regard to the title, by May 10, 1877, and, in default of so doing, the agreement was to become void. Possession was to be given to Scully on the execution of the agreement. The provisions of the contract, out of which this controversy arises, are as follows:

"The said Messrs. James C. and George Hamilton, or William Scully, agree, at their own expense, respectively, to survey the said land, if they see fit, for the purpose of ascertaining the amount of acres contained therein, said survey to be made by the county surveyor or some other competent surveyor. And it is hereby agreed, that if, on actual survey, the land shall be shown to contain more acres than is shown by the government survey, the said William Scully shall pay the difference, and if upon such survey the said land shall be shown to contain a less amount of acres than is shown by the government survey, the amount thereof shall be deducted from said purchase money, and said William Scully allowed a credit of said amount on his said note and mortgage."

The contract was fully executed and closed by the 1st day of April 1878. Appellee received a conveyance of the property and the possession thereof, according to the terms of the

agreement.   He paid the $15,000 and the $85,000, at the dates agreed upon, and was ready to pay the $115,297.40 on March 1, 1878.   The latter amount was not paid until April 1, 1878, because the Hamiltons did not, before that time, obtain a release of the trust deed, dated March 13, 1875.

Appellee caused no survey of the land to be made.   Appellant and James C. Hamilton had a survey made in January 1884, of which appellee received no notice until January or February 1885, nearly seven years after all the purchase money had been paid.   The survey made showed an excess, over the government survey, of $68\frac{72}{100}$ acres, $66\frac{92}{100}$ acres in the lands sold at $50 per acre, and $1\frac{80}{100}$ acres in those sold at $45 per acre.   This suit was begun on February 16, 1885, by appellant against appellee to recover the value of these $68\frac{72}{100}$ acres, and, for such value, the judgment of the circuit court was rendered.

The parties to the contract had a right to make surveys, if they should "see fit."   The making of the surveys was not a matter of obligation, but a matter of option.   The purpose of making the survey was to ascertain the number of acres, contained in the premises sold.   It was important to the Hamiltons to ascertain the number of acres, in order to increase, if possible, the purchase money to be received for the lands. It was important to appellee to ascertain the number of acres, in order to decrease, if possible, the purchase money to be paid.   The contract specified, that all the purchase money was to be paid up by March 1, 1878.   If, therefore, any steps were to be taken for either the increase or the decrease of the purchase money, such steps were to be taken before March 1, 1878.   Although the provisions of the contract, in reference to the survey, specify no particular time, at which such survey was to be made, yet, when all parts of the contract are construed together, it is manifest, that it was the intention of the parties to fully complete it, and finally close it up on or before March 1, 1878.   Whatever was necessary to deter-

mine the character of the title, or the amount to be paid, was to be done between April 17, 1877 and March 1, 1878. The deed of the property was to be executed and delivered by May 10, 1877. The documents, clearing up certain objections to the title, were to be furnished by May 10, 1877. The release of the existing incumbrance was to be obtained by June 1, 1877.

It is unreasonable to suppose, that, where all the other acts, required of either party to the contract, were to be performed between its date and the day fixed for the payment of the last installment of the purchase money, the sole act of making the survey was to be left for performance, whenever either party should get ready, even though after the lapse of some seven years. The proof shows, that the survey could have been made in two or three weeks, and it was the duty of appellant and James C. Hamilton, if they had good reason to think, that they were deeding away a larger quantity of land than that, specified in their contract, to have had the various tracts surveyed, before they accepted $115,297.40, as the agreed balance of the purchase money.

The view, here expressed, is sustained by the language, used in the last clause of the portion of the agreement, above quoted. It is there provided, that, if the survey shall show the lands conveyed to contain a less number of acres, than that called for by the government survey, "the amount thereof shall be deducted from said purchase money, and said William Scully allowed *a credit of said amount on his said note and mortgage.*" He had agreed to pay the note and mortgage on March 1, 1878. How, then, could a credit be endorsed on them, unless such credit was ascertained, before they were paid and taken up and cancelled? The amount of such credit could only be ascertained by the survey. If appellee was required to make his survey, in order to ascertain the possible deficiency, by March 1, 1878, it will surely not be claimed, that appellant and James C. Hamilton were not bound to

make their survey before the same date, in order to ascertain the possible excess.

Moreover, where no time is expressed in a written contract for the performance of its terms, the law will imply, that it shall be within a reasonable time. (*Driver et al.* v. *Ford et al.* 90 Ill. 595.) "Where a party to a contract undertakes to do some particular act, the performance of which depends entirely on himself, and the contract is silent as to the time of performance, the law implies an engagement, that it shall be executed within a reasonable time, without reference to extraordinary circumstances." (2 Chitty on Cont. 11th Am. ed. 1062.) The agreement of appellant and James C. Hamilton to make a survey depended entirely upon themselves. They were to make it or not, as they should "see fit." If, therefore, the contract can not be construed, as requiring the survey to be made before March 1, 1878, and must be held to be "silent as to the time of performance," then, even from this point of view, the Hamiltons were bound to make the survey within a reasonable time. We do not think, that the survey, upon which this suit is based, made, as it was, nearly seven years after the contract of sale was fully executed, was, under the circumstances shown by this record, made within a reasonable time.

For the reasons, here stated, the judgment of the Appellate Court is affirmed.

*Judgment affirmed.*