The Illinois Joint Stock Land Bank of Monticello, Appellant, v. Harvey G. Terry et al., Appellees.
Harvey G. Terry, Appellee, v. The Illinois Joint Stock Land Bank of Monticello, Appellant.

Gen. No. 8,972.

Opinion filed April 17, 1936.

GREEN & PALMER, of Urbana, and ROBERT SHONK-WILER, of Monticello, for appellant; HENRY I. GREEN, ENOS L. PHILLIPS, ORIS BARTH and CLAUDIA E. STONE, of counsel.

ACTON, ACTON & BALDWIN, of Danville, for appellee; W. M. ACTON, of counsel.

MR. JUSTICE FULTON delivered the opinion of the court.

Harvey G. Terry, one of the appellees, was the owner of 386 acres of farm land in Vermilion county, Illinois. On March 27, 1926, he and Libbie J. Terry, his wife, executed a mortgage on said land to secure the payment of a note in the principal sum of $33,000, payable to the order of appellant, the Illinois Joint Stock Land Bank of Monticello, a corporation. The note bore interest at the rate of 5¼ per cent per annum, payable semiannually, on the amortization plan. There had been a default in the payment of the instalments on the note and mortgage since October 1, 1931, and on December 30, 1932, the appellant filed its original bill in the circuit court of Vermilion county. The cause was referred to the master in chancery who took testimony on August 9, 1933, and made a report to the court, recommending a foreclosure of the mortgage. Exceptions to the master's report were overruled by the court on November 23, 1934, but no decree was entered at that time.

On July 8, 1935, the appellee, Harvey G. Terry, was given leave and filed his counterclaim or cross complaint in this cause. Further testimony was heard before the court on August 2, 1935, so that the issues were tried upon the original bill and also upon the counterclaim, together with the answers thereto. On August 21, 1935, a decree was entered in favor of the appellee, Terry, which restrained the further prosecution of the foreclosure suit until the further order of the court, retained jurisdiction of the proceeding, and provided for a decree of specific performance on the counterclaim, requiring the appellant to carry out an agreement that it made with the said appellee to accept bonds of the Federal Land Bank of St. Louis and certain cash in satisfaction of the mortgage. During the pendency of the foreclosure proceedings appellee arranged with his creditors to scale down his obligations so that he might secure a new mortgage on the property and make settlement with the appellant. He had also filed a debtor's petition under the Frazier-Lemke Act and the federal court had issued a restraining order against the further prosecution of the foreclosure suit.

Beginning with the fall of 1933, and all through the year 1934, there were negotiations between counsel for the appellant and the appellee concerning an adjustment or settlement of the mortgage indebtedness. It is the contention of the appellee, and so found by the decree of the court, that these negotiations terminated in an offer of settlement being made by the appellant in a letter dated January 22, 1935, and that that offer was accepted in writing by the appellee in a letter dated February 4, 1935, and that such offer and acceptance constituted a binding contract for the discharge of the indebtedness due the appellant from the appellee upon the terms and conditions set forth in the letter of January 22nd. The said letter was

directed to Green & Palmer, attorneys for appellant, and reads as follows:

"January 26th, 1935.

"Attention: Mr. Enos L. Phillips

"In re: H. G. Terry—L. B. 797

"Dear Mr. Phillips:

"Pursuant to the information which you gave to me today, settlement seems to have been effected with Mr. Terry upon the following conditions:

"(1) The payment to this bank of $32,500 as of the 6 day of Dec. 1934.

"(2) The payment to this Bank of interest at 5¼% per annum upon the $32,500 from the 6 day of Dec. 1934 until the Bank receives the money.

"(3) This Bank to accept Federal Farm Mortgage Corporation bonds at market value, and not at par. They are slightly in excess at par now.

"(4) This Bank to dismiss the foreclosure proceedings at its cost, and to pay all attorney fees and expenses thereof.

"(5) The Bank to receive the net proceeds of the receivership, except as to the 1934 crop of corn, which we have agreed, shall be Mr. Terry's individual property. This includes all crops, pasture rent, and proceeds of the land up to this date, with the exception of the 1934 crop of corn, as stated. Of course, the receiver fees and the fees of the attorney, and the court costs of the receivership are to be taken out of the sum due this Bank from the receiver.

"(6) The Bank to expedite the procedure of dismissal, so that same will be ready within 30 days of the date stipulated, by which this settlement is completed.

"(7) In addition, Mr. Terry shall pay whatever fee you charge this Bank for your work occasioned by the commencement by Mr. Terry of the procedure under the Frazier-Lemke Law. The Bank agreed to

pay you $250.00 for the defense of this law, and the procedure against Mrs. Terry, and whatever fee you require up to the $250 must be paid by Mr. Terry.

"(8) The 1934 tax to be paid by Mr. Terry. As soon as we receive a definite statement from Mr. Terry that he is accepting our proposition, we will notify you to forward the abstract to Mr. W. H. Rohrer, Acting Secretary of The Vermilion County NFLA, Danville, Illinois.

"With kindest regards, we are Yours truly,

"JWA:ELM        J. W. Ayre, Executive Manager."

The above letter was mailed to Mr. William Acton, counsel for appellee, at Danville, Illinois, by Mr. Phillips, stating that he would be glad to be informed as soon as counsel had received word from Mr. Terry. After conferring with his client and on February 4, 1935, Mr. Acton wrote Phillips, of the firm of Green & Palmer, as follows:

"Your letter received with copies of offer of the Illinois Joint Stock Land Bank of Monticello to Harvey G. Terry. Mr. Terry has accepted the same, and is rushing matters with the Federal Land Bank to close the matter up." Thereupon, the appellee, through the Vermilion County National Farm Loan Association, made an application to the Federal Land Bank of St. Louis for a loan upon the lands on which appellant held said mortgage, expended $50 for an appraisal fee, and other moneys for a continuation of the abstract of title. The Federal Land Bank caused the land to be appraised on March 25, 1935. On April 9, 1935, the Federal Land Bank notified the Vermilion County National Farm Loan Association of the fact of said appraisal having been made and the approval of the application for a loan of $32,500, and requested the appellant to sign form 101-B consenting to accept the Federal Land Bank bonds. No reply was made by the appellant to this request until

May 7, 1935, on which date it signed form 101-B and stated it was advising its attorneys Green & Palmer to forward the abstracts. In the same communication, appellant put in a provision that the bonds were to be delivered within 45 days from May 7, 1935. As this date would expire on June 21, 1935, the Federal Land Bank wrote a letter to the secretary of the Vermilion County N. F. L. A. asking that appellant sign a new form 101-B. No response was received from appellant until on June 24th, when it wrote a letter to appellee Terry stating that the 45 days from May 7th had passed and abrogating the settlement solely because of the time limitation set forth in their letter of May 7th. On the hearing of the cause in August, there was testimony by the officers of the Vermilion County N. F. L. A. that it would take about three more weeks in which to close this loan and that the average time in which loans of this kind could be closed after the receipt of the first application was about six months.

The appellant urgently contends that the letters above quoted did not constitute an offer and an acceptance; that the letter by appellants to its lawyers stating that it was willing to negotiate, upon certain conditions, did not in any sense make an offer. It further asserts that all of the correspondence, during the year 1934, should be considered in determining whether or not an agreement had been reached; that all of the letters, written by appellant, merely were an accommodation to the appellee Terry; that because of the stipulations in prior correspondence limiting the date for settlement and the failure of appellee to meet with said stipulations, there was no definite offer made on the part of appellant which was within the power of appellee to accept. It seems clear to us that if it had been in the contemplation of appellant that they had not made an offer of settlement and that the

same had not been accepted by the appellee that there would have been some response to the so-called acceptance letter under date of February 4, 1935. Furthermore, we cannot understand why appellant should have signed form 101-B, or given instructions to its attorneys to forward the abstract of title for the purpose of assisting in the securing of the new loan if they did not consider that terms of settlement had been agreed upon on the terms specified in their letter. The exact terms and conditions were contained in their letter without reference to previous negotiations or correspondence to which the appellee sent an unqualified acceptance. The appellant had been engaged in the business of making farm loans and was fully acquainted with the time necessary for closing deals of the character contemplated. It is our judgment that the court was fully warranted in finding that it was the mutual intention of the parties to make a binding contract for the discharge of the indebtedness due appellant from appellee upon the terms and conditions of said written offer.

It is further claimed by appellant that specific performance could not be decreed in any event because the contract failed to provide the date of payment of the mortgage debt. Under the circumstances of this case it is our judgment that the contract was understandable by both the parties and that it was not so indefinite as to be void because no time for performance was specified. In a situation like this one it is implied that performance will take place within a reasonable time. *Willhite v. Schurtz*, 294 Ill. 309; *Hamilton v. Scully*, 118 Ill. 192. After appellant had entered upon the contract it was not within their power, by a subsequent communication, to limit the time of performance to 45 days and to declare the contract canceled because of appellee's failure to perform within that period.

Appellant also complains that there was no consideration, on the part of appellant, for the contract but where, as in this case, there is a suit pending and negotiations carried on between the parties with reference to a settlement and an agreement to accept payment by bonds, the general rule that the payment of a smaller sum in satisfaction of a larger is not a good discharge of a debt does not apply.

Appellant further urges that the record shows conclusively that the appellee was hopelessly insolvent and unable to take care of his outside indebtedness so that it would have been impossible for him to perform the contract upon the conditions named. While there is room for speculation as to whether or not the appellee Terry would be able to perform, there is nothing in the testimony which positively proves that it would be impossible for him to do so and appellant's repudiation of the contract was not based upon any reason of that character.

The fact that the market value of the bonds of appellant had increased in value had nothing to do with the agreement between the parties and is not material to the defense of appellant to the cross complaint in this case.

We believe it was commendable on the part of the appellant and its attorneys to negotiate with and give the appellee an opportunity to refinance his loan which they were under no legal obligation to do but after dealing with him and making the suggestion and offer contained in their letter of January 22nd, which was rather promptly accepted by the appellee, it was not within their power to change the terms of the contract, especially after appellee had gone to considerable trouble and expense in attempting to perform the contract upon the exact terms agreed upon. The provision of the decree allowing the appellee 60 days as a reasonable time within which to perform the contract

and reserving jurisdiction of the proceeding was a wise and equitable feature of said decree. We believe, with the trial court, that the agreement in this case was fairly made; that the failure to complete the said contract was not caused by any refusal or act of the appellee and that the action of the appellant in canceling the contract was unfair, inequitable and unjust under the circumstances of this case.

The decree of the trial court should therefore be affirmed.

*Affirmed.*