(No. 28994.—  )

ALBERT H. MILLER *et al.*, Appellants, *vs.* R. D. PETTENGILL *et al.*—(JOSEPH EHREDT, Appellee.)

*Opinion filed November 21, 1945.*

JAMES L. COBURN, and LOUIS A. NACK, both of Galena, for appellants.

FRANKLIN U. STRANSKY, (FRANKLIN J. STRANSKY, of counsel,) both of Chicago, for appellee.

Mr. JUSTICE FULTON delivered the opinion of the court:

Albert H. Miller, on October 15, 1942, and for many years prior to that time, was the owner of a 157-acre farm in Jo Daviess county, Illinois. On January 26, 1944, he filed his bill to quiet title to the farm in the circuit court of Jo Daviess county against R. D. Pettengill and Frances

Pettengill. In his complaint, Albert Miller alleged that the Pettengills unlawfully claimed the right to purchase the farm by virtue of a prior contract for sale entered into between the parties on or about October 15, 1942, and that this contract, which had been recorded on October 21, 1942, constituted a cloud upon his title.

Joseph Ehredt, to whom on January 24, 1944, the Pettengills had assigned their contract, intervened as a defendant and filed a counterclaim asking specific performance of the Pettengill contract. R. Leslie Miller, with whom Albert Miller, the plaintiff, had made a contract for the same farm on October 28, 1943, also intervened as a defendant. The Pettengills were defaulted for want of answer, and, after a hearing on the answer of R. Leslie Miller and on the answer and cross-complaint of Joseph Ehredt, the circuit court of Jo Daviess county, on January 27, 1945, entered a decree ordering specific performance of Miller's contract with the Pettengills and directing Albert Miller to convey the real estate in question to Joseph Ehredt. The cause comes to us on appeal by Albert H. Miller and R. Leslie Miller from this decree of the circuit court.

The record indicates that Henry Cliff, the father of Frances Pettengill, had been a tenant on this farm for about 40 years and that for the past 13 years R. D. Pettengill and Frances Pettengill, his wife, had resided on the farm and had worked with Henry Cliff in the operation and management thereof. Henry Cliff died on August 20, 1942. The Pettengills continued to reside on and operate the farm after the death of Cliff. A short time after Cliff's death, a conversation was had between the Pettengills and Albert H. Miller concerning the purchase of the farm by the Pettengills. At this time, it was agreed that the Pettengills should have the first opportunity to buy the farm at the price of $11,000. Subsequently, on or about October 15, 1942, a written contract for the sale of the farm at a

price of $11,000 cash was prepared at Miller's direction, executed by him, and forwarded to the Pettengills for their signature. Upon execution by the Pettengills, the contract was recorded. Albert Miller's wife, Lou Miller, did not execute the contract, merely signing it as a witness. It is evident from the testimony that one of the purposes for the written contract was to permit or facilitate the securing by the Pettengills of a Federal loan to finance the purchase of the property.

The contract between Albert Miller and the Pettengills was undated but acknowledged by Albert Miller on October 11, 1942. It provided for the payment of $11,000 in cash upon the delivery of the deed, for the payment of the taxes subsequent to the year 1942 by the buyers, and that the time of payment should be of the essence of the contract. It neglected, however, to provide for any time for the payment of the price reserved and the delivery of the deed.

Sometime subsequent to the date of the Pettengill contract and prior to February 23, 1943, the Federal Land Bank rejected the application of the Pettengills for a loan. On February 23, 1943, Albert Miller and his wife, at the suggestion of the Pettengills, met with the latter at the office of R. R. Heidenreich, county loan agent for the Federal Land Bank, at Woodbine, Illinois. At this meeting it was suggested that Albert Miller make application for the loan himself and, as both Mr. and Mrs. Pettengill testified, "turn the loan over to us." This Miller refused to do. On the same day, a lease between Albert Miller and R. D. Pettengill for the farm in question for the period from March 1, 1943, to March 1, 1944, was entered into. This lease was prepared at the direction of Albert Miller and provided for the payment of $1200 in cash rent. The Pettengills remained in possession of the farm throughout the year of 1943, and were likewise in possession when Albert Miller filed his bill to quiet title in January, 1944.

During the negotiations between the Pettengills and Albert Miller for the purchase of the farm, the share of Mrs. Pettengill in the estate of her father was discussed and considered. The evidence shows that Miller knew Mrs. Pettengill had an undistributed share in that estate, which, together with what the Pettengills could raise from the sale of certain personal property on the farm, was going to be used by the Pettengills for the purpose of the down payment on the purchase price of the farm. Miller also knew that it would take a year or more to administer the estate of Henry Cliff and distribute the respective shares. As a matter of fact, the estate of Cliff was still in the process of probate at the time this action was begun.

The above facts are not in controversy. The controversy in this cases arises out of the different contentions concerning the purpose and effect of the lease entered into on February 23, 1943. Albert Miller contends that the intention of the parties was that the lease should take the place of and abrogate the contract and that by the execution thereof R. D. Pettengill relinquished any rights he might have as a contract purchaser. R. D. Pettengill testified that on the day the lease was executed he asked Albert Miller whether he wanted to draw up a new contract and that Miller replied "no," that the old one was all right. It is also a fact that the lease was drawn by someone at the direction of Miller and that the lease makes no reference to the previous contract. Furthermore, neither on February 23, 1943, nor at any time thereafter, did Miller ever demand the return of the contract with the Pettengills nor is there any other evidence that the contract had been forfeited or relinquished. It is significant to note at this point that Miller, on cross-examination, stated that as far as he was concerned the Pettengills had a right under the contract, up until he made the second contract with R. Leslie Miller, to come in with the $11,000 and secure a deed to the farm at any time.

The Pettengills contend that if they were successful in working out financial arrangements for the purchase of the farm the $1200 rent reserved was to apply on the purchase price. It might be observed here that in all of these negotiations neither party was represented by an attorney nor did an attorney prepare any of the papers or documents in question.

Without going into the evidence produced at the hearing in too great detail, it also showed that the second contract with R. Leslie Miller was for $12,000; that it was entered into on or about October 28, 1943, and recorded January 21, 1944; that both the Pettengills and their assignee, Joseph Ehredt, had, in the fall of 1943, heard that R. Leslie Miller had some interest or claim in connection with the property; that R. Leslie Miller had both constructive and actual notice of the Pettengill contract when he secured his contract with Albert Miller. The evidence further indicates that Albert Miller never made a demand on the Pettengills for the money due on their contract nor offered them a deed. It also appears that for the first time on January 21, 1944, Ivor Smith, an attorney at Hanover, Illinois, called Albert Miller by long distance telephone at Pineville, Indiana, and told Miller that the Pettengills were ready and able to go through with the purchase of the property for the sum of $11,000. Miller then informed Smith that he had already made arrangements with R. Leslie Miller for a sale to the latter. Three days later, on January 24, 1944, for the sum of $750, the Pettengills assigned their contract to Joseph Ehredt, which assignment was recorded on January 26, 1944, the same day on which the bill to quiet title herein was filed. Ehredt, it appears, had been dickering with the Pettengills for some time prior to January 24, 1944, for an assignment of the contract, and it also appears that he was instrumental in the financial backing behind the telephone offer to Miller of January 21, 1944. On February 3, 1944,

eight days after Albert Miller filed his bill to quiet title, Ehredt wrote Albert Miller advising him that he, by assignment, had secured the rights of the Pettengills and was ready to complete the deal.

The principal defense interposed by Albert Miller to the counterclaim of Joseph Ehredt was that the contract between Miller and the Pettengills was no longer in force due to the lapse of a reasonable time, and that the lease of the farm abrogated the former contract of purchase. The trial court found that a good title could be made by the plaintiff, Albert H. Miller, and that the material allegations contained in the counterclaim of Joseph Ehredt were true, and that the equities of the cause were with the said Ehredt, and then decreed specific performance of the Pettengill contract, and that Ehredt pay to the plaintiff the sum of $11,000 upon the tender and delivery by Albert Miller of a deed to the premises.

One of the points raised by appellant on this appeal is that inasmuch as the wife of Albert Miller did not sign the contract she cannot be forced to relinquish her dower interest in the property. However, the wife of Albert Miller is not a party to this proceeding, and any decree of the circuit court can have no bearing upon any dower interest which she may have in the farm in question. The second point raised by the appellant is that the assignee of this contract can acquire no greater rights in the property than were possessed by the original contract vendees. With this proposition of law we are in full accord. The third proposition urged by appellant as a reason for reversing the action of the trial court is that in the absence of a fixed time for the performance of an agreement, a reasonable time will be presumed to have been intended by the parties, citing *Driver* v. *Ford,* 90 Ill. 595; *Hamilton* v. *Scully,* 118 Ill. 192; *Willhite* v. *Schurtz,* 294 Ill. 309. We agree with the principles enunciated in these cases, but

are of the opinion that they are not controlling in the case at bar. It is equally well-established law in this State that in the face of evidence a legal presumption ceases to exist and is of no force and effect, and that while, standing alone, such presumption might establish a *prima facie* case, never is a presumption weighed in the balance against evidence to establish a fact. *Lohr* v. *Barkmann Cartage Co.* 335 Ill. 335; *Nelson* v. *Stutz Chicago Factory Branch,* 341 Ill. 387.

While the trial court incorporated in its decree no specific finding of facts, in order to find for the counterclaimant it must have found either that in the light of all the circumstances the Pettengills exercised their right to purchase the property in question within a reasonable time, or that it was understood and agreed between the parties at the time the lease of February 23 was entered into that the Pettengills were to have the right during the period of the lease to make other arrangements for the financing of the purchase of the farm. There is testimony in the record which indicates that the purpose of the lease was to protect the owner in the event that arrangements to finance the sale were ultimately fruitless. The evidence also indicates that at no time subsequent to February 23, 1945, did Albert Miller inform the Pettengills that the contract was in default or take any action to rescind the same other than the second contract to R. Leslie Miller. Neither did he tender a deed and demand the purchase price.

The fact that a contract vendee under a contract with no specific time limitation, and while negotiating for financial arrangements, enters into a lease with the vendor for the same piece of property, creates no legal anomaly. It would seem that the closing of the original Pettengill contract was hampered by the failure to secure a Federal loan, the delay in securing Mrs. Pettengill's interest in her father's estate and the fact that no affirmative action was

taken by Albert Miller, either to hurry up the performance on the part of the Pettengills or to forfeit the contract because of the lapse of time.

The questions in the case are largely ones of fact. Where the chancellor hears conflicting testimony in open court, as here, his findings will not be disturbed unless manifestly and palpably against the weight of the evidence. (*Brozina* v. *Wanda,* 387 Ill. 46.) In this case the chancellor saw and heard the parties and all of their witnesses and was in a better position to determine the facts than is a reviewing court. There is nothing in the record which convinces us that his holdings are manifestly against the weight of the evidence.

The decree of the circuit court of Jo Daviess county is affirmed.

*Decree affirmed.*