DORIS LAMKIN, Admr. of the Estate of Robert E. Lamkin, Deceased, Plaintiff-Appellant, *v.* JAMES FRIZOL, d/b/a Frizol's Tavern, *et al.*, Defendants-Appellees—(GLADYS COGDAL, Individually, and as Admr. of the Estate of Duane Cogdal, Deceased, for the use and benefit of Janice Cogdal, a minor, *et al.*, Plaintiff-Appellant, *v.* JAMES FRIZOL, d/b/a Frizol's Tavern, *et al.*, Defendants-Appellees.)

(No. 71-70;

Third District—August 28, 1972.

130

Louis Olivero, of Peru, and Leo J. Schwamberger, of La Salle, for appellants.

R. J. Lannon, of La Salle, for appellees.

Mr. JUSTICE SCOTT delivered the opinion of the court:

This appeal stems from a dram shop suit brought by Doris Lamkin and Gladys Cogdal, hereinafter referred to as the plaintiffs, to recover damages against the owners and operators of Frizol's Tavern, hereinafter referred to as the defendants, by reason of the deaths of Robert Lamkin and Duane Cogdal, the minor sons of the plaintiffs. After trial by jury a verdict in the amount of $11,021.00 was returned in favor of the plaintiff Cogdal and a verdict in the sum of $13,000.00 was returned in favor of the plaintiff Lamkin. The defendants filed a post trial motion for a new trial which was granted by the trial court. From this action of the trial court the plaintiffs have appealed.

A more detailed statement of the facts is as follows. Robert E. Lamkin and Duane Cogdal, early in the evening of October 16, 1966, drove from their home in Arlington, Illinois, to the home of a William Knowlton in Mendota, Illinois. Later that evening after a certain amount of drinking had taken place Cogdal, Lamkin and Knowlton went to Frizol's Tavern where they all contributed money for the purchase of a half-pint of vodka. Lamkin received the money and entered the tavern. A short time later he left the tavern, carrying a package and rejoined his two companions who were waiting in the car. The package which Lamkin brought to the car contained a half-pint of vodka. Shortly thereafter Lamkin, who had been driving the automobile all evening, left the vicinity of Frizol's Tavern and drove his two companions to a rural area where they drank the vodka and other liquor. Cogdal then drove the motor vehicle which belonged to Lamkin to the home of Knowlton. Lamkin and Cogdal announced that they were going home and after leaving Knowlton they presumably proceeded homeward. A short time later the automobile was involved in an accident when it sheared off a utility pole, then plummeted through the air until it landed in a corn field. Both of the boys Lamkin and Cogdal were killed as a result of the accident. The body of Lamkin was found some distance from the automobile while Cogdal's body was found suspended and hanging in an upside down position inside the car.

During the course of the trial the following special interrogatory was submitted to the jury:

"Do you find from the preponderance of the evidence that Robert Lamkin was the operator of the vehicle at the time of the occurrence in question? Answer Yes or No."

The interrogatory was answered in the affirmative. This interrogatory and the answer thereto was a very material and crucial element in the case for it is apparent that if Duane Cogdal had been driving the automobile there could have been no recovery in the dram shop action since there was no evidence whatsoever that the defendants had in any way provided Cogdal with intoxicating beverages. The record discloses that there was circumstantial evidence to the effect that the defendants had provided Lamkin with a half-pint of vodka. It was therefore incumbent upon both the plaintiffs to prove that Lamkin was the driver of the automobile if they were to recover damages.

In support of the defendants' post trial motion for judgment notwithstanding the verdict or in the alternative that a new trial be granted a number of grounds were set forth, however, we first direct our attention to the one which claims that the jury was improperly instructed as to the law in regard to what gives rise to a "presumption."

The complained of instruction given to the jury on behalf of the plaintiff Cogdal was as follows:

"The Court instructs the jury that if you find from the preponderance of the evidence that at the time of the incident in question, the owner of the Chevrolet automobile involved in the collision was in the automobile, then the presumption is that he was operating the same at the time of the collision in question. If evidence is introduced which is contrary to the presumption, the presumption will cease to operate."

Our reviewing courts have on many occasions passed upon the propriety of giving an instruction on the presumption of law when a disputed question of fact was involved. That we have in the instant case a disputed factual situation is indisputable. The crucial question presented to the jury was who was driving the automobile at the time of the accident. Testimony on this question was all circumstantial since there were no eyewitnesses immediately prior to or at the time of the accident.

The first person to arrive at the scene of the accident was a Reverend Van Ort who testified that he found the automobile upside down, its wheels still turning, and a suspended body (Cogdal's) inside the vehicle. He stated that the body in the car was located "left and center" and it appeared that the legs "were pinned on the left." On cross-examination he testified, "I went to the auto and touched the other boy who was behind the steering wheel. He also appeared dead."

Officer Zywica, who was dispatched to the scene of the accident, testified that the boy (Cogdal) was hanging upside down in the car, that his feet were pinned on the driver's side, up underneath, on the dash. On cross-examination he stated that the feet of Cogdal were under the driver's side, and that his body was sort of at an angle toward the passenger side. When asked for an opinion the officer stated that in his opinion Cogdal was driving the car at the time of the accident and that his opinion was based upon the position of the body, the damage to the vehicle and on a conversation that he had with the boy Knowlton, who had been with the decedents earlier in the evening.

Glade Faber, a farmer who lived near the scene of the accident, testified that he went to the scene and upon his arrival there found a young man in the car with his head sort of under the steering wheel. He further testified that Cogdal's right foot was wedged up in the right top of the car and his leg was across the console to the right hand side of the car and that the body was suspended. On cross examination Faber testified that he didn't think the car was on its top. He further testified on cross examination as follows:

"Q. It is your recollection one or more of the wheels were touching the ground at that time?

A. Yes.

Q. It wasn't on its top?

A. No, it couldn't have been.

Q. And the upper portion of the body in the car was between the steering wheel and the front seat?

A. Yes."

Knowlton, the deceased boys' companion, testified that when they left him at his home Cogdal was driving the car and that this was shortly before 10:00 o'clock P.M. All of the witnesses were in substantial agreement that the fatal accident occurred shortly before 10:00 o'clock P.M.

Thomas Lamkin, a brother of the decedent Robert Lamkin, arrived at the scene of the accident before the bodies were removed and testified that none of the wheels on the vehicle were touching the ground, that Cogdal's body was pinned on the driver's side.

Wally Salsman, a deputy coroner, testified that the car was upside down.

We have recited the testimony adduced during the course of the trial in some detail since it unquestionably establishes that there was indeed a dispute as to determinative fact as to who was driving the car at the time Lamkin and Cogdal met their deaths.

It is not incumbent upon us to evaluate the testimony in an effort

to determine the true facts as to the occurrence. We are only concerned with the propriety of the "presumption instruction" given to the jury by the trial court.

The plaintiffs in support of the propriety of giving the "presumption instruction" cite the case of *McElroy v. Force,* 38 Ill.2d 528, 232 N.E.2d 708, in which our Supreme Court held that proof of ownership raises a presumption that the automobile was under the owner's control at the time of the accident. It should, however, be noted that the Supreme Court in *McElroy* observed that there was simply no evidence which could be reasonably construed to meet the presumption. In *McElroy* the deceased was the only person known to have driven his auto on the night in question and the court concluded that an instruction concerning the rebuttable quality of the presumption would not have related to any evidence presented and could have confused the jurors.

In the instant case three witnesses, namely, Reverend Van Ort, Officer Zywica and Thomas Lamkin, testified that the body of Cogdal was located on the driver's side of the auto. It must be noted that the witness Thomas Lamkin was in the position of a beneficial plaintiff in a dram shop action brought by the administrator of his deceased brother's estate and therefore his testimony constituted an admission against his own interest since he could not possibly recover unless his deceased brother was found to have been the driver of the vehicle at the time of the accident. All of these witnesses plus Salsman, the deputy coroner, testified that the car was upside down, lying on its top with all the wheels in the air.

The only witness that placed Cogdal's body in a position other than on the driver's side was Glade Faber and he further stated that the car was not upside down and that there was probably a wheel or two touching the ground.

The witness Knowlton, who had been a passenger and companion with Lamkin and Cogdal on the night of the tragic accident, testified that Cogdal drove him home in Lamkin's car and was still driving it when he last saw him a few minutes prior to the accident.

With such conflicting testimony present in the instant case we do not believe that the "presumption instruction" should have been given. We reach this conclusion even though in the same instruction the jury was advised as follows, "If evidence is introduced which is contrary to the presumption, the presumption will cease to operate." We can only conclude that the effect of such an instruction would be to confuse a jury which had before it ample evidence albeit circumstantial to determine the pivotal question as to who was driving the automobile. In so hold-

ing we believe that we are following the well established law as set forth in *Osborne v. Osborne,* 325 Ill. 229, 156 N.E. 306; *Miller v. Pettengill,* 392 Ill. 117, 63 N.E.2d 735; and *McElroy v. Force,* 75 Ill.App.2d 441, 220 N.E.2d 761, as affirmed in 38 Ill.2d 528, 232 N.E.2d 708.

Other grounds which the defendants urged as constituting reasons for the granting of a new trial were that insurance was mentioned three separate times during the trial by a witness who was not a defense witness; that a prejudicial attempt was made by the plaintiffs to prove that the defendants had sold liquor to minors on other occasions; that a prejudicial and unfair reference was made as to the failure of defense counsel to produce certain statements; and that highly suggestive and inflammatory remarks were made by counsel for the plaintiff Gladys Cogdal during final argument.

In holding that the giving of the "presumption instruction" constituted reversible error we do not deem it necessary to make a determination as to whether these additional grounds constitute reversible error. We subscribe to the remarks contained in the trial judge's very able opinion which stated:

"In summation, it is felt by the court that the giving of the aforementioned instruction [the presumption instruction] by the court was erroneous, and would by itself have justified the granting of a new trial. In addition to this, as hereinbefore set forth, it is felt that many other forces operated to deprive the defendants of a fair trial in this case, and the ends of justice require that the court grants a new trial herein, at which trial it is hoped that many of the defects which occurred in the trial of this cause will be cured or avoided * * *."

For the reasons set forth the order of the trial court granting the defendants a new trial is affirmed and this cause is remanded to the circuit court of La Salle County for such purpose.

Order affirmed.

STOUDER, P. J., and ALLOY, J., concur.