(No. 47980.

ANTHONY DIEDERICH, Adm'r, Appellee, v. WILLIAM W. WALTERS, Appellant.

*Opinion filed October 1, 1976.*

GOLDENHERSH, J., WARD, C.J. and CREBS, J., dissenting.

Rathje, Woodward, Dyer & Burt, of Wheaton (Robert E. Dyer, of counsel), for appellant.

Mirabella, Facktor, Mirabella & Kincaid, of Wheaton (John B. Kincaid, of counsel), for appellee.

MR. JUSTICE UNDERWOOD delivered the opinion of the court:

This is a wrongful death action brought in the circuit court of Du Page County by plaintiff, Anthony Diederich, as administrator of the estate of Richard John Diederich, against the defendant, William W. Walters, who was the driver of an automobile which struck and killed the 13-year-old decedent as he was walking along a highway. The complaint alleged that the defendant had operated the motor vehicle in excess of the posted speed limit, failed to maintain a proper lookout for pedestrians lawfully upon the highway, and failed to keep his automobile under control at all times. The jury answered a special interrogatory finding plaintiff's decedent guilty of contributory negligence and rendered a verdict in favor of defendant. The appellate court reversed and remanded for a new trial on the grounds that the trial court had erred (1) in not giving plaintiff's tendered instruction advising the jury as to the rebuttable presumption that a child 7 to 14 years of age is incapable of contributory negligence; and (2) in permitting a police officer who investigated the accident to state his opinion as to the speed of defendant's automobile based upon the length of skid marks. (*Diederich v. Walters* (1975), 31 Ill. App. 3d 594.) We granted leave to appeal.

The accident occurred on September 18, 1971, at approximately 9:45 p.m. on Clarendon Hills Road between 67th and 68th Streets in Du Page County. Clarendon Hills Road is a two-lane highway which runs in a north-south direction. The decedent was walking south on the west side of the highway when he was struck from behind by the defendant's car, which was also proceeding south in the southbound lane.

Two friends of the decedent, Vicki Pusateri and Edward Goff, ages 14 and 15 respectively at the time of the accident, testified that they were walking with the decedent on the way to a high school dance when the

accident occurred. They testified that there were no sidewalks along Clarendon Hills Road and that the two of them were walking side by side on the paved portion of the highway with the decedent walking behind them. Whenever they heard traffic approaching from the rear, they would step off the pavement onto the gravel shoulder until the traffic passed. It was dark, and the roadway was not illuminated in the vicinity of the accident. The decedent was wearing dark clothing. No other pedestrians were in the area at the time.

The two witnesses testified that when they heard the "loud noise" of defendant's car approaching, they stepped off the pavement and then heard the impact of the car striking the decedent behind them. The car proceeded past them and came to a stop approximately 200 feet to the south. Vicki Pusateri testified that on the basis of her experience riding in cars driven by her parents and boy friends, she thought the defendant's car was traveling at least 40 miles per hour as it passed her. On the basis of similar criteria, Edward Goff testified that he was of the opinion that the car was going about 50 miles per hour as it went past. Both witnesses stated that they never heard a horn before the impact occurred.

A passenger in defendant's car testified that the defendant's car was proceeding no faster than 30 or 35 miles per hour at the time of the accident and that he never saw the decedent before the impact. He further testified that the car did not leave the pavement either before or after the accident.

The police officer who investigated the accident was called as a witness by the plaintiff. He testified on direct examination that he found skid marks which measured 63 feet on the driver's side and 61 feet 6 inches on the passenger side. The defendant's car was found on the highway approximately 100 feet south of the point at which the skid marks ended, and the decedent's body was found on the pavement approximately 11 feet behind the

car. The car had sustained damage to its right, front side. The posted speed limit at that location was 35 miles per hour. On cross-examination, the officer was permitted to testify over objection by the plaintiff as to his use of a nomograph, which is a chart used to determine approximately how fast a vehicle was traveling based upon the length of the skid marks and the coefficient of friction of the particular road surface. He testified that the nomograph indicated an approximate speed of 34 miles per hour. He also stated that his investigation of the shoulder of the roadway gave no indication that the defendant's car had ever left the paved portion of the highway. On redirect examination, the officer testified that the nomograph only gives an approximate minimum speed based on the length of skid marks and that the defendant's car could have been traveling faster than 34 miles per hour.

The principal question raised on this appeal is whether the trial court erred in refusing to give plaintiff's tendered instruction No. 14 advising the jury as to the rebuttable presumption in Illinois that a child of 7 to 14 years of age is incapable of negligent conduct. Plaintiff's tendered instruction No. 14 stated: "Since the decedent, Richard Diederich, was under the age of 14 at the time of the occurrence, there is a presumption that he was free from contributory negligence." The trial court rejected the tendered instruction and gave instead Illinois Pattern Jury Instruction (IPI) Civil No. 10.05 in the following language: "A minor is not held to the same standard of conduct as an adult. When I use the words 'ordinary care' with respect to the decedent, I mean that degree of care which a reasonably careful minor of the age, mental capacity and experience of the decedent would use under circumstances similar to those shown by the evidence. The law does not say how such a minor would act under those circumstances. That is for you to decide." The jury was also instructed in the language of IPI Civil No. 10.06 that: "The rule I have just stated also applies when a minor is charged

with having violated a statute." The jury was further instructed:

"There was in force in the State of Illinois at the time of the occurrence in question a certain statute which provided:

'(a) Any person walking along and upon improved highways shall keep on the left of the paved portion or on the left shoulder thereof and upon meeting a vehicle while walking on such paved portion shall step off to the left.'

If you decide that the plaintiff's decedent violated the statute on the occasion in question, then you may consider that fact together with all the other facts and circumstances in evidence in determining whether or not the plaintiff's decedent was contributorily negligent before and at the time of the occurrence."

In reversing and remanding for a new trial, the appellate court concluded that IPI Civil No. 10.05 did not instruct the jury as to the presumption that a minor under the age of 14 years is free from contributory negligence and that failure to so instruct the jury constituted reversible error. While we agree with the appellate court that IPI Civil No. 10.05 did not instruct the jury as to the presumption in question, we do not concur with that court's determination that it was necessary to do so on the facts of this case.

The determination of whether a jury should be instructed as to the existence of a presumption must be made by the trial court in the context of the facts and circumstances of each case with reference to the applicable law, the evidence, other instructions and the particular nature and procedural effect of the presumption itself. With regard to the procedural effect of presumptions, most jurisdictions in this country follow the rule that a rebuttable presumption may create a *prima facie* case as to the particular issue in question and thus has the practical effect of requiring the party against whom it operates to come forward with evidence to meet the presumption. However, once evidence opposing the presumption comes

into the case, the presumption ceases to operate, and the issue is determined on the basis of the evidence adduced at trial as if no presumption had ever existed. (See 1 Jones, Evidence sec. 3:8 (6th ed. 1972).) The burden of proof thus does not shift but remains with the party who initially had the benefit of the presumption. Consistent with this view, Dean Wigmore states in his treatise on evidence that "the peculiar effect of a presumption 'of law' (that is, the real presumption) is merely to invoke a rule of law compelling the jury to reach the conclusion *in the absence of evidence to the contrary* from the opponent. If the opponent *does* offer evidence to the contrary (sufficient to satisfy the judge's requirement of some evidence), the presumption disappears as a rule of law, and the case is in the jury's hands free from any rule \*\*\*." (9 Wigmore, Evidence sec. 2491, at 289 (3d ed. 1940).) As stated in Jones on Evidence, "since the presumption loses its force when evidence is introduced against it, it would naturally follow that no mention of the presumption would be made in the instructions to the jury, and the issue is submitted without any knowledge on the part of the jury of the special legal significance of the basic facts from which the presumption originally arose." 1 Jones, Evidence sec. 3:9, at 146 (6th ed. 1972).

Under the other view, which is sometimes referred to as the Pennsylvania Rule, the presumption continues in effect even in the face of rebutting evidence. The party against whom the presumption operates has the burden of proof of overcoming the presumption, and in this respect the burden of proof as to that issue shifts to the opponent. The jury usually should be instructed as to the existence of the presumption, since it would normally be the jury's function to determine whether the opponent had produced sufficient evidence to rebut the presumption. See cases collected at Annot., *Effect Of Presumption As Evidence Or Upon Burden Of Proof, Where Controverting Evidence Is Introduced,* 5 A.L.R.3d 19 (1966).

The prevailing view that a presumption ceases to operate in the face of contrary evidence has generally been followed in Illinois. As was stated by this court in *Coal Creek Drainage and Levee District v. Sanitary District* (1929), 336 Ill. 11, 31, and restated in numerous subsequent decisions: "A presumption is not evidence and cannot be treated as evidence. It cannot be weighed in the scale against evidence. Presumptions are never indulged in against established facts. They are indulged in only to supply the place of facts. As soon as evidence is produced which is contrary to the presumption which arose before the contrary proof was offered the presumption vanishes entirely." (See, *e.g., Lohr v. H. Barkmann Cartage Co.* (1929), 335 Ill. 335; *Bollenbach v. Bloomenthal* (1930), 341 Ill. 539; *Miller v. Pettengill* (1945), 392 Ill. 117.) More recently in *McElroy v. Force* (1967), 38 Ill. 2d 528, 532-33, we stated: "A rebuttable presumption, such as exists here, is not evidence in itself, but arises as a rule of law or legal conclusion from facts proved. (*Osborne v. Osborne*, 325 Ill. 229; *Brown v. Brown*, 329 Ill. 198; *Trustees of Schools v. Lilly*, 373 Ill. 431.) These presumptions 'do not shift the burden of proof. Their only effect is to create the necessity of evidence to meet the *prima facie* case created thereby, and which, if no proof to the contrary is offered, will prevail.' (*Helbig v. Citizens' Insurance Co.*, 234 Ill. 251, 257; accord, *Brown v. Brown*, 329 Ill. 198; *Johnson v. Prendergast*, 308 Ill. 255.) Stated differently, the presence of a presumption in a case only has the effect of shifting to the party against whom it operates the burden of going forward and introducing evidence to meet the presumption. If evidence is introduced which is contrary to the presumption, the presumption will cease to operate. (*Osborne v. Osborne*, 325 Ill. 229; *Lohr v. Barkmann Cartage Co.*, 335 Ill. 335; *Miller v. Pettengill*, 392 Ill. 117.) However, where there is an absence of evidence to the contrary, the *prima facie* case

created under the presumption will support a finding. See *Morrison v. Flowers,* 308 Ill. 189 at 195."

In the case at bar, the jury was properly instructed that the plaintiff had the burden of proving that plaintiff's decedent was using ordinary care for his own safety at the time of the accident. Had there been no evidence that the decedent failed to exercise the degree of care which a reasonably careful minor of the same age, mental capacity and experience would exercise under the circumstances, then the rebuttable presumption that a child 13 years of age is incapable of negligence would have been operable and it might have been appropriate under those circumstances to instruct the jury as to the existence of the presumption. (*McElroy v. Force* (1967), 38 Ill. 2d 528.) However, we agree with the trial judge that the record before us contains sufficient evidence of failure by plaintiff's decedent to exercise the requisite degree of care to cause the presumption to cease to operate and therefore eliminate the need for any instruction to the jury regarding the presumption. Instead, the jury was correctly left to determine the question of contributory negligence on the basis of the applicable criteria as set forth in IPI Civil No. 10.05. We conclude, therefore, that the jury was properly instructed on the issue of contributory negligence and that the trial court did not err in rejecting plaintiff's tendered instruction No. 14.

In rendering its decision, the appellate court relied upon *American National Bank and Trust Co. v. Pennsylvania R.R. Co.* (1964), 52 Ill. App. 2d 406, *aff'd,* 35 Ill. 2d 145. In that case, the defendants in a personal injury action alleged as an affirmative defense that the minor plaintiff was guilty of contributory negligence as a consequence of an alleged violation of a statute. The appellate court noted that, in setting up the claimed violation as an affirmative defense, the defendants thereby took upon themselves the burden of proving that the

violation had in fact occurred. Accordingly, the court held that the trial court did not err in instructing the jury as to the presumption that a child 13 years of age does not have the mental capacity to violate the law and that the party relying upon the claimed violation of the statute by the child has the burden of overcoming the presumption by proving that the child did have such capacity at the time. The court concluded that the instruction properly stated the law. It is evident that the *American National Bank* case and the case at bar are distinguishable insofar as the burden of proof applicable to the respective parties on the question of contributory negligence is concerned. Also, unlike this case, it does not appear that any question was raised in that case as to whether the presumption had become inoperable due to the existence of evidence contrary to the presumption. Accordingly, it can fairly be said that the *American National Bank* case was concerned with a different question decided in a context different from the case now under consideration.

The second issue before us on this appeal concerns the admission of the investigating officer's testimony regarding his use of a nomograph to determine the speed of defendant's automobile. The appellate court held that the trial court committed prejudicial error in admitting the testimony not only because the officer's qualifications as an expert had not been established, but also because of the fact that since there were eyewitnesses to the accident there was no need for the introduction of accident reconstruction testimony. Even if the testimony in question was improperly admitted, we do not concur that it constituted reversible error on the facts of this case. It will be recalled that it was the plaintiff who first elicited the testimony from the police officer as to the length of the skid marks. On cross-examination, the defendant attempted to explain the meaning of the skid marks by eliciting the nomograph testimony. On redirect examination, it was clearly brought out that the nomograph could only give an

approximate minimum speed the car was traveling at the time the skid marks were laid down. It was also emphasized that the car had stopped approximately 100 feet south of where the skid marks ended. The officer conceded that a driver could apply his brakes, lay down 63 feet of skid marks, release the brakes and then reduce his speed and stop somewhere down the road in which event the length of the skid marks would not give a true reading of how fast the car was going when the brakes were first applied. It appears to us that the net effect of the investigating officer's testimony regarding his use of the nomograph was that defendant's car was traveling no less than 34 miles per hour and could well have been traveling faster at the time of the occurrence. When viewed in the context of the other testimony, including that of eyewitnesses as to the speed of the car, the admission of the nomograph evidence in our opinion did not cause prejudicial error.

Accordingly, the judgment of the appellate court is reversed, and the judgment of the circuit court of Du Page County is affirmed.

*Appellate court reversed;*
*circuit court affirmed.*

MR. JUSTICE GOLDENHERSH, dissenting:

I dissent. In my opinion the appellate court correctly held that the jury should have been instructed that there was a presumption that a minor under the age of 14 years was free from contributory negligence.

Citing *Coal Creek Drainage and Levee District v. Sanitary District,* 336 Ill. 11, *Lohr v. Barkmann Cartage Co.,* 335 Ill. 335, *Bollenbach v. Bloomenthal,* 341 Ill. 539, *Miller v. Pettengill,* 392 Ill. 117, and *McElroy v. Force,* 38 Ill. 2d 528, the majority concludes that "The prevailing view that a presumption ceases to operate in the face of contrary evidence has generally been followed in Illinois." (65 Ill. 2d at 102.) Assuming *arguendo* the correctness

of the majority's conclusion the flaw in its treatment of the question is that it has attempted to apply the same rule to all presumptions whereas it is clear from the decisions of this court that all presumptions are not alike.

*Coal Creek* involved a contention that the population in the sanitary district was presumed to be the same in 1922 as at the time of the prior census; *Lohr* involved the presumption that the driver of a truck was the owner's agent; *Bollenbach* involved a contention that *res ipsa loquitur* applied in an action brought by a patient against a dentist; *Miller* involved the contention that "in the absence of a fixed time for the performance of an agreement a reasonable time will be presumed to have been intended by the parties"; *McElroy* involved the presumption that the owner of an automobile was driving it at the time of a collision. *Coal Creek, Bollenbach* and *Miller* are not in point. In *Lohr* and *McElroy,* unlike this case, the presumptions served, in lieu of evidence, to make a *prima facie* case on a factual issue amenable to proof and which upon introduction of contrary evidence became inoperative.

The presumption that a child between the ages of 7 and 14 is incapable of negligence arises as a matter of law upon proof of the child's age. The fact question presented to the jury was not whether the deceased was incapable of negligence; the fact question was whether the child used that degree of care which a reasonably careful minor of his age, capacity and experience would use under circumstances similar to those shown by the evidence. The presumption is not conclusive, but unless the jury is instructed concerning it, it is rendered meaningless, and the minor's conduct, under the circumstances shown, is judged without the benefit of the presumption.

An analogous situation is the presumption in an action for wrongful death. Regardless of the nature and amount of evidence to the contrary the jury is to be instructed concerning the presumption that the lineal next of kin

have suffered substantial pecuniary loss. (See Illinois Pattern Jury Instructions, Civil Nos. 31.01, 31.03, 31.04, 31.06.) This presumption, too, is not conclusive (*Flynn v. Vancil,* 41 Ill. 2d 236), but unless the jury is properly instructed it is rendered meaningless.

The basic inconsistency of the majority's position is demonstrated by the following statement, "In the case at bar, the jury was properly instructed that the plaintiff had the burden of proving that plaintiff's decedent was using ordinary care for his own safety at the time of the accident. Had there been no evidence that the decedent failed to exercise the degree of care which a reasonably careful minor of the same age, mental capacity and experience would exercise under the circumstances, then the rebuttable presumption that a child 13 years of age is incapable of negligence would have been operable and it might have been appropriate under those circumstances to instruct the jury as to the existence of the presumption." (65 Ill. 2d at 103.) If the majority is correct that upon introduction of evidence the presumption ceases to operate, then logic would require that if there were no such evidence the jury be directed to find for the plaintiff on that issue.

In *Maskaliunas v. Chicago and Western Indiana R.R. Co.,* 318 Ill. 142, 149-50, the court said, "[W]hile there has been some slight deviation in a few cases in the application of the rule by this court, it is fairly well established by this court and courts of other jurisdictions that a child under seven years of age is conclusively presumed incapable of contributory negligence, and that in the case of a child above the age of fourteen years the same rule shall be applied to him in that regard as is applied to adults, his intelligence and experience being considered. The law is clearly established by great weight of authority, that between the ages of seven and fourteen the question of culpability of the child is an open question of fact and must be left to the jury to determine, taking

into consideration the age, capacity, intelligence and experience of the child."

In this case the jury was instructed in the language of a section of the Illinois Vehicle Code and then told "If you decide that the plaintiff's decedent violated the statute on the occasion in question, then you may consider that fact together with all the other facts and circumstances in evidence in determining whether or not the plaintiff's decedent was contributorily negligent before and at the time of the occurrence." It was further instructed in the language of IPI Civil No. 10.05 that "The law does not say how such a minor would act under those circumstances. That is for you to decide," and in the language of IPI Civil No. 10.06 that "The rule I have just stated also applies when a minor is charged with having violated a statute." The effect of these instructions, in the absence of an instruction that the decedent was presumed to be incapable of contributory negligence, was to hold the decedent to the same standard of care that applied to a child over the age of 14 years.

WARD, C.J. and CREBS, J., join in this dissent.