JOHN COFFEY, as Father and Next Friend of John F. Coffey, Infant, Plaintiff-Appellant, *v.* DALE E. HANCOCK, Defendant-Appellee.

Third District No. 3—83—0269

Opinion filed March 6, 1984.

Alan R. Bruggeman, of Condon & Bruggeman, of New Lenox, for appellant.

John J. McGarry, of Stefanich, McGarry & Wols, Ltd., of Joliet, for appellee.

JUSTICE BARRY delivered the opinion of the court:

Plaintiff, John F. Coffey, was five years old on June 24, 1978, when he drove his bicycle out of a driveway onto Old Wolf Road and into the path of an automobile driven by defendant, Dale Hancock. The child suffered serious personal injuries as a result of the collision that occurred. This suit, sounding in negligence, was initiated on young John's behalf by his father, also named John Coffey. A jury trial was held in the circuit court of Will County, and a verdict in favor of the defendant was returned. Judgment was entered thereon, and the plaintiff's motion for a new trial was denied. This appeal by plaintiff followed. We affirm.

Before addressing the issues on appeal, we must dispose of defendant's "motion to strike appellant's brief and to dismiss appeal." The motion was spawned by the abbreviated format of plaintiff's "statement of facts" from which plaintiff proceeded to argue four major issues. Specifically, the "statement of facts" as presented by plaintiff consists of the following recitation:

"On June 24, 1978, at approximately 12:08 P.M., JOHN F. COFFEY, an infant of the age of five years, was riding his bicycle along with one of his friends. COFFEY rode his bicycle out of a driveway and entered Old Wolf Road, a paved public street running north and south within Will County, Illinois. At the same time, the Defendant, DALE E. HANCOCK, was driving his 1973 Ford automobile in a northerly direction along Old Wolf Road. The Defendant's automobile struck JOHN F. COFFEY causing various physical injuries to JOHN F. COFFEY. In his attempt to stop, the Defendant's automobile left skid marks on Old Wolf Road of approximately 60 feet in length.

As a result of the collision, JOHN H. COFFEY, as father and next friend of JOHN F COFFEY, brought this action alleging that the Defendant, DALE HANCOCK had been negligent in

causing the collision. The cause went to trial and the jury, after hearing the evidence, rendered a verdict for the Defendant. The trial judge entered the judgment on the jury verdict from which this appeal is taken by the Plaintiff."

The issues plaintiff asks us to review are: "(1) whether the trial court ruled correctly on objections to the admission of the reconstruction expert testimony; (2) whether the trial court ruled correctly on objections to the improper questioning of an expert witness; (3) whether the jury was properly instructed on the law of comparative negligence; and (4) whether the plaintiff was unfairly prejudiced by certain remarks made by the Defendant's counsel during his closing argument."

■ Defendant's motion makes two cogent points: that the recitation of facts falls short of the requirements of Supreme Court Rule 341(e)(6) (87 Ill. 2d R. 341(e)(6)); and that this court is not a depository in which an appellate may dump its arguments without factual foundation in hopes that we will sift through the entire record to find support for a determination favorable to appellant's position. Suffice it to say, we are a tribunal of justice and are not inclined on this occasion to grant the defendant the severe sanctions he seeks by way of relief. We elect not to deprive the parties-in-interest of the benefit of our views on the substantive issues. Consequently, we are denying defendant's motion which was taken with the case.

As part of his case in chief, plaintiff's counsel called the defendant as the sole eyewitness capable of testifying to the circumstances surrounding the 1978 accident. Hancock testified that on the date of the accident, around noon, he was traveling from his home on Cleveland Road in Mokena to a friend's home, also in Mokena. The evidence established that the day was warm and clear and the pavement was dry. Hancock proceeded west along Cleveland Road to the intersection with Old Wolf Road, and then north. Hancock estimated that his speed was 5 to 10 miles per hour on the turn, although he did not recall having looked at his speedometer at any point immediately prior to hitting the minor plaintiff.

Deputy Frederick Osborne of the Will County sheriff's office testified that he was called out to investigate the scene of the accident on June 24, 1978. Osborne had served with the sheriff's office for 10½ years and had received training in accident reconstruction at Northwestern University's Traffic Institute. Osborne marked the scene, took measurements and directed the evidence technician to take several photographs. Osborne described the road surface as a tar-and-chip composition. The road width varied between approximately 17 to

18 feet, and a 4% downgrade in the road was noted between the point where Hancock entered Old Wolf Road and the point of impact with the minor plaintiff. It was determined that Hancock's car had left 60 feet of skid marks. The rear of the vehicle had yawed to the left approximately 15 feet after entering the skid and there was an approximately three-foot deviation between the front wheel tracks and the rear wheel tracks where the skid marks stopped. Osborne was not asked on direct examination whether the defendant's speed was determinable on the basis of the skid marks he left.

In cross-examination, however, Osborne testified that at the traffic institute he had learned a formula for determining the speed of a vehicle by examining skid marks. The mathematical formula required inclusion of a figure known as the "drag factor." The drag factor, according to Osborne, was determinable by conducting a test stop at certain speeds with an identical car operated under the same conditions as existed during the accident in question. In the instant case, the drag factor had not been determined by him because the policy of the sheriff's office was to use their staff to perform the tests only in fatal accident cases. Finally, in cross-examination, Osborne stated that the traffic institute taught its trainees how to determine the drag factor without conducting like-circumstances tests as well. Osborne stated that he did not have a degree in engineering. He was not asked to give the formula for determining the drag factor, nor was he asked to give his opinion as to the speed of defendant's car based on his observations.

Over the objections of plaintiff's counsel, the trial court permitted defendant to introduce expert testimony of Williard A. Alroth, a consulting traffic engineer, on the question of the speed of defendant's vehicle immediately prior to the accident. Although Alroth's qualifications as an expert accident reconstruction witness were not challenged, plaintiff's counsel argued that the expression of his opinion of the defendant's speed would invade the province of the jury. The trial judge ruled, however, that Alroth could testify because the judge was not sure that lay jurors could interpret the significance of 60 feet of skid marks.

Alroth testified that he had reviewed photographs of the scene of the accident and had visited the scene itself the morning he was called to testify to take various measurements and observe the road surface. Alroth described the composition of the road as asphalt concrete, a mixture of stone aggregate and tar bitumen material. Alroth further explained that in this case the skid markings depicted in the photographs represented not only the tearing away of rubber particles

from the vehicle's tires, but that the friction between the braked tires and the road surface had created sufficient heat to melt some of the tar in the road surface, causing it to act as a lubricant, and appearing in the photographs as the darker markings. The melting tar phenomenon contributed to the vehicle's decreased ability to come to a halt while in the skid.

Alroth's examination of the scene and the photographs of the defendant's car and tires indicated that the braking system had not failed and that the tire treads were good and did not contribute as a factor in causing the skid or inability to stop prior to impact. Based on his analysis, Alroth derived a range for the drag factor of .5 to .6 and applied the formula to reach his opinion that the defendant's vehicle was traveling between 29 and 32 miles per hour when the brakes were applied. Alroth testified that once the wheels were locked and the car was in the skid, any attempt to veer the car to the left or right would be ineffective because the car would propel forwards out of the driver's control. Alroth explained that the yawing effect demonstrated by the skid marks in this case could have been caused by the crown in the road and the defendant's position near its center as he skidded to a halt.

It is within the context of the foregoing facts of record that we consider the plaintiff's first issue on appeal—whether the court's admission of Willard Alroth's testimony at trial constituted reversible error. Plaintiff argues that the expert's expression of an estimated speed consistent with that approximated by the defendant unfairly bolstered the defendant's own statement and invaded the fact-finding province of the jury. Plaintiff relies primarily on two recent cases in which accident reconstruction expert witness testimony was determined inadmissible, *Peterson v. Lou Bachrodt Chevrolet Co.* (1979), 76 Ill. 2d 353, 392 N.E.2d 1, and *Trillet v. Bachman* (1981), 96 Ill. App. 3d 477, 421 N.E.2d 580.

In *Peterson*, an important issue in deciding whether the defendant auto dealership was guilty of any negligence concerned the speed of the subject vehicle prior to collision. The driver in that case, Elder, approximated his speed at 35 to 45 miles per hour. His two passengers gave estimates of between 40 and 50 miles per hour. Another driver testified that he was headed in the same direction as Elder and Elder passed him at 65 miles per hour or more shortly before the accident. Both the plaintiff and the defendant introduced non-eye-witness reconstruction testimony to bolster their positions on the issue of speed. Our supreme court, after reviewing relevant precedent, held that the admission of the reconstruction testimony in *Peterson* was re-

versible error. The court explained:

"Because we believe that the speed of an automobile is not a matter beyond the ken of the average juror (*Delaney v. Badame* (1971), 49 Ill. 2d 168, 178), we hold that the circuit court erred in admitting reconstruction testimony. The jurors could draw their own conclusions on the basis of eyewitness testimony.

We do not agree, as defendant argues, that the admission of the reconstruction testimony was harmless error. As defendant points out, the estimates of speed given by reconstruction witnesses were consistent with those given by some of the eyewitnesses. These reconstruction estimates, however, contradicted the testimony of other eyewitnesses, and we cannot safely say that the jury was not influenced by the inadmissible reconstruction testimony." *Peterson v. Lou Bachrodt Chevrolet Co.* (1979), 76 Ill. 2d 353, 359, 392 N.E.2d 1, 3-4.

In *Trillett*, we relied on *Peterson* and ruled that reconstruction testimony concerning a vehicle's speed prior to collision would be improper on retrial of the case. There, as in *Peterson*, both the driver and a passenger provided estimates of the vehicle's speed at trial. Plaintiff's motion for a continuance to procure an expert accident reconstruction witness to testify concerning speed, as determined on the basis of 120 to 130 feet of skid marks, was denied in the trial court. We found no error in that ruling:

"[T]he evidence desired by the plaintiffs would have been inadmissible. Our supreme court has held that speed of an automobile is not a matter beyond the ken of an average juror and that jurors can draw their own conclusions on the basis of eyewitness testimony and hence admission of reconstruction testimony concerning speed of an automobile was error. (*Peterson v. Lou Bachrodt Chevrolet Co.* (1979), 76 Ill. 2d 353, 392 N.E.2d 1.) In the instant case the plaintiff Mrs. Trillet observed the defendant's automobile twice, and she testified as to its speed and movement. The defendant testified as to the speed of his automobile at various points in its progress. The jury also had before it physical facts as to length and placement of skid marks, and photographs of the damaged vehicles. With such evidence it was not beyond the ability of the jury to determine the speed of the vehicles. The case of *Peterson* is controlling in that the testimony of a reconstruction expert would have been inadmissible and thus the motion for continuance was properly denied." *Trillet v. Bachman* (1981), 96 Ill. App. 3d 477, 481,

421 N.E.2d 580, 583-84.

Despite the apparently broad language of *Peterson* and *Trillet* condemning the use of accident reconstruction testimony for purposes of determining a vehicle's speed, we do not find these decisions controlling here.

▮ The admission of expert testimony concerning a vehicle's speed does not automatically result in reversible error in every case. Generally, where eyewitnesses to an accident are available to testify as to speed, reconstruction testimony may not be introduced as a substitute for the direct lay eyewitness testimony. Where differences in lay opinions are introduced, essentially the trier of fact is faced with an issue of witness credibility, a matter peculiarly appropriate for jury determination without the assistance of expert testimony which, if admitted in such circumstances, would tend merely to overpersuade in favor of the party introducing it. However, an exception to the foregoing rule of nonadmissibility obtains and is unaffected by the decisions in *Peterson* and *Trillett* where knowledge and application of principles of physics and chemistry are necessary to the jurors' proper interpretation of a vehicle's speed based on the physical evidence of an accident. In such a case, the trial judge, in the exercise of his discretion, may admit accident reconstruction testimony by a qualified expert in addition to eyewitness testimony (*Plank v. Holman* (1970), 46 Ill. 2d 465, 264 N.E.2d 12), and the trial judge's determination will not be disturbed on appeal unless it is clearly shown that he abused his discretion. *Jamison v. Lambke* (1974), 21 Ill. App. 3d 629, 316 N.E.2d 93.

As observed by defendant on appeal, the factual situation in the present case is comparable to that of *Diederich v. Walters* (1976), 65 Ill. 2d 95, 357 N.E.2d 1128. In *Diederich*, a wrongful-death action, at least three eyewitnesses to the accident testified and estimated that the defendant's car was traveling between 30 and 50 miles per hour prior to the impact with plaintiff's decedent. Plaintiff called as a witness the police officer who investigated the scene of the accident. On direct examination, the officer testified that the defendant's car left 63 feet of skid marks.

In cross-examination, over plaintiff's objection, the officer was permitted to use a nomograph to explain the skid marks. He approximated that the defendant was traveling a minimum of 34 miles per hour, but he might have been going faster.

On appeal, the court found that the investigating officer's testimony respecting the speed of defendant's car was reversible error. (*Diederich v. Walters* (1975), 31 Ill. App. 3d 594, 334 N.E.2d 283.)

The appellate decision was reversed by the supreme court. The court's reasoning follows:

"Even if the testimony in question was improperly admitted, we do not concur that it constituted reversible error on the facts of this case. It will be recalled that it was the plaintiff who first elicited the testimony from the police officer as to the length of the skid marks. On cross-examination, the defendant attempted to explain the meaning of the skid marks by eliciting the nomograph testimony. On redirect examination, it was clearly brought out that the nomograph could only give an approximate minimum speed the car was traveling at the time the skid marks were laid down. *** It appears to us that the net effect of the investigating officer's testimony regarding his use of the nomograph was that the defendant's car was traveling no less than 34 miles per hour and could well have been traveling faster at the time of the occurrence. When viewed in the context of the other testimony, including that of eyewitnesses as to the speed of the car, the admission of the nomograph evidence in our opinion did not cause prejudicial error. *Diederich v. Walters* (1976), 65 Ill. 2d 95, 104-05, 357 N.E.2d 1128, 1132-33.

We do not read the *Diederich* opinion as holding that the trial court's evidentiary ruling was necessarily erroneous.

■ In the case before us, unlike *Diederich*, there was no available eyewitnesses to the accident, other than the defendant himself. Thus, a stronger case is presented for admission of the reconstruction expert's testimony. Within the framework of the trial in the present case, we believe the trial court properly ruled that the facts presented during plaintiff's case called for application of the exception to the rule disfavoring accident reconstruction testimony and that expert witness Alroth's testimony would be helpful to the finders of fact. This is so in part because plaintiff's counsel initiated testimony about the skid marks and emphasized to the jurors in opening and closing argument that they were 60 feet in length. The plaintiff's counsel did not offer an estimate of speed through the investigating police officer or any further explanation of the significance of the skid marks.

When called at trial to testify in the plaintiff's case in chief, Hancock stated in response to counsel's specific inquiry that he could not remember having looked at his speedometer at any time between the moment when he turned from Cleveland on to Old Wolf Road and the moment when his car struck the plaintiff. Later, during presentation of the defendant's case, Hancock provided his estimate of 25 to 30

miles per hour. In cross-examination, plaintiff's counsel again brought up the matter of the speedometer, this time asking whether the defendant had ever worked on it and whether it worked on the date of the accident. To this, the defendant responded that he had done no mechanical work on the instrument and that it was working when the accident occurred.

It is clear to us that plaintiff's counsel was attempting to impeach the defendant's testimony about his driving speed prior to the accident and to use both the fact that the defendant could not state that his estimate was based on a check of the instrument panel and the measured length of the skid marks to argue that he must have been going faster than 30 miles per hour. In effect, plaintiff's counsel invited the jury to disbelieve the defendant and then to speculate that the defendant's speed was excessive. The sole reason for plaintiff introducing evidence of the skid marks and their length through the police officer without offering any estimate of speed by the police officer was to ask the jury to translate the fact of the skid marks into a conclusion of the defendant's excessive speed. Of further significance is the fact that it was plaintiff's witness, Osborne, who introduced a partial foundation for applying a mathematical formula to verify the speed of a vehicle based on skid marks and then offered no facts from which speed could be calculated in this case.

On these facts, we cannot state that the trial court abused its discretion in permitting the defendant to provide expert testimony to assist the jury in interpreting the skid marks. While it is true the expert testimony served to bolster the defendant's approximation of his speed, we cannot say that the introduction of Alroth's testimony deprived plaintiff of a fair trial. (*Cf. Peterson; Trillet.*) The evidence responded to one of the main thrusts of plaintiff's case. It was generally consistent with the testimony introduced by plaintiff's own witnesses. In the posture of this case, unlike *Peterson* and *Trillet*, the expert testimony was admissible because "it [was] necessary to rely on knowledge and application of principles of science beyond the ken of the average juror" (*Plank v. Holman* (1970), 46 Ill. 2d 465, 471, 264 N.E.2d 12, 15) to interpret what the skid marks meant about the speed of defendant's vehicle.

Although we find no error in the admission of Alroth's testimony in this case, we cannot leave this issue without observing that even if it were error, inasmuch as the testimony was invited by plaintiff's case in chief and was not inconsistent with other testimony, its admission was harmless and neither a reversal nor remandment for a new trial would be appropriate on this basis. See *Diederich v. Walters*

(1976), 65 Ill. 2d 95, 105, 357 N.E.2d 1128, 1132-33.

■ The plaintiff's second issue concerns the adequacy of the foundation laid by defendant's counsel prior to eliciting expert witness Alroth's opinion of the speed of defendant's car. The hypothetical question is no longer the only means of eliciting an expert opinion where, as here, the expert lacks first-hand knowledge of the facts. In *Wilson v. Clark* (1981), 84 Ill. 2d 186, 417 N.E.2d 1322, our supreme court adopted Federal Rules of Evidence 703 and 705, which permit the expert witness to base his opinion on data presented outside of court and place on the adverse party the burden of eliciting during cross-examination the facts underlying that opinion. Applying these rules to the present case, we find that no error occurred in eliciting expert witness Alroth's opinion.

■ Plaintiff's issues concerning the jury instructions and defense counsel's closing argument are not well taken. Since plaintiff failed to tender instructions on comparative negligence to cure any confusion that might have resulted from giving Illinois Pattern Jury Instruction, Civil, No. 11.03 (2d ed. 1971) respecting the minor plaintiff's incapacity for contributory negligence, we need not consider the plaintiff's arguments on appeal. Similarly, our review of defense counsel's closing argument discloses that no objections were raised so as to preserve any error that may have been committed. Furthermore, the specific comments complained of by plaintiff were not so prejudicial or inappropriate as to be beyond the bounds of fair argument given the matters raised in the trial of this cause.

For the foregoing reasons, we affirm the judgment of the circuit court of Will County.

Affirmed.

Alloy and SCOTT, JJ., concur.