AMERICAN COUNTRY INSURANCE COMPANY, Plaintiff-Appellee, v. TARA MAHONEY, Defendant-Appellant.

First District (5th Division)   No. 1—89—0316

Opinion filed September 7, 1990.

454

Sullivan, Smith, Hauser & Noonan, Ltd., of Chicago (Richard J. Smith, of counsel), for appellant.

Beermann, Swerdlove, Woloshin & Barezky, of Chicago (Alvin R. Becker and Timothy M. Kelly, of counsel), for appellee.

PRESIDING JUSTICE COCCIA delivered the opinion of the court:

## INTRODUCTION

Defendant Tara Mahoney appeals from two orders entered against her by the circuit court. In the first order, the court denied her motion to transfer venue from Cook County; in the second order, the court entered summary judgment in favor of plaintiff American Country Insurance Company, declaring Mahoney's automobile insurance policy null and void from its inception. We affirm for the following reasons.

## BACKGROUND

American filed its complaint for declaratory judgment in chancery on June 13, 1988. American alleged that on June 12, 1986, Mahoney applied in writing for automobile liability insurance on a 1986 Pontiac

Sunbird. American further alleged that Mahoney represented in her application that she was the sole driver of the insured vehicle, she was the vehicle's sole owner, and no member of her household had a moving violation within the last five years. American attached Mahoney's application as an exhibit to its complaint. Mahoney answered "No" in response to the following questions:

"4 Has applicant or any operator of the auto ever had:
(a) Driver's license revoked or suspended?
(h) Driving while intoxicated?"

The application also provided:

"ALL QUESTIONS MUST BE TRUTHFULLY ANSWERED. ANY FALSE OR FRAUDULENT ANSWERS MAY RESULT IN DENIAL OF COVERAGE.

Applicant's Statement: The applicant hereto, states that he read this application and attests that all answers given by him to the questions asked herein are truthful to the best of his knowledge and belief and that said answers were made as inducement to the insurance company to issue a policy, and it is a special condition of this policy that the policy shall be NULL and VOID and of no benefit or effect whatsoever as to any claim arising thereunder in the event that the attestations or statements in this application shall prove to be false or fraudulent in nature. It is understood that a copy of this application shall be attached to and form a part of the policy of insurance when issued and that it is intended that the company shall rely on the contents of this application in issuing any policy of insurance or renewal thereof."

In reliance on these representations, American averred, it issued a policy to Mahoney.

American went on to allege that Mahoney's representations were false and fraudulent within the meaning of section 154 of the Illinois Insurance Code (Ill. Rev. Stat. 1987, ch. 73, par. 766). According to American, Mahoney and John G. Bleile were residents of the same household; Bleile was the co-owner of the insured auto; he was a regular operator of the auto for at least 50% of its use; and in the three years prior to the issuance of the policy, he had been convicted of numerous traffic violations, including driving while intoxicated and reckless driving, for which his driving privileges were revoked effective March 20, 1986. American also attached a copy of Bleile's driving record to its complaint.

On March 18, 1988, American claimed, Mahoney was involved in an accident with Stephen Cregar while driving the auto. In this accident the Pontiac was damaged, Mahoney was injured, Cregar was injured,

and his auto was damaged. Mahoney then asserted claims under the policy. American stated that Cregar might assert claims under it as well.

American alleged that it learned of Mahoney's misrepresentations on June 1, 1988. American attached a copy of its letter to Mahoney, dated June 8, 1988, to the complaint. That letter states in part:

"We return to you herewith check No. 03478 in the sum of $1,534.00 which is the total premiums received for insurance with this Company. Due to your misrepresentation and concealment of material facts on your application for insurance with this Company, you do not have nor have you ever had insurance with this Company."

American concluded that an actual controversy existed which could be fully and finally determined by a declaratory judgment, and it prayed that the chancellor adjudge and declare Mahoney's policy void from its inception.

On August 25, 1988, American filed its amended complaint. American named General Motors Acceptance Corporation as an additional defendant, alleging that GMAC was a loss payee under the insurance contract.

American filed its motion for summary judgment and supporting memorandum on September 29, 1988. American argued that section 154 of the Insurance Code has been construed to mean that either the insured's intent to deceive the insurer or a material misrepresentation is sufficient to void a policy. And if Mahoney's misrepresentations were not intentional, American contended, they were certainly material.

American repeated the allegation from its complaint that Mahoney, in her application, indicated she was the sole licensed operator in her household. American attached Mahoney's affidavit as an exhibit to its motion for summary judgment; apparently, Mahoney originally filed this affidavit in a lawsuit that she commenced in Lake County, which we shall discuss at greater length below. According to her affidavit, Mahoney was residing with Bleile when she submitted the application for insurance. They lived together for at least one year before Mahoney submitted the application, and they continued to live together until one year thereafter. American also attached Bleile's statement to its motion. According to Bleile, he was a licensed operator, although his driving privileges had been suspended. Thus, American concluded, Mahoney misrepresented the number of licensed drivers in her household.

American went on to contend that Mahoney likewise misrepresented the auto's ownership. The Secretary of State's records for the Sunbird, which American attached as an exhibit to its motion, showed title in her name as well as Bleile's. The auto's certificate of origin, which Ameri-

can also attached to the motion, reflected the names of both Mahoney and Bleile as purchasers. While Bleile was a co-signer on the loan because Mahoney had no established credit, he did trade in his car so the Sunbird could be purchased. Monthly payments from the date of purchase (December 1986) until their relationship ended (November 1987) were split between Bleile and Mahoney. In his statement, Bleile also admitted that he drove the auto 50% of the time; that the Sunbird was his primary vehicle; that he had no other insurance; and that he did not seek coverage for himself at that time, and instead had Mahoney take out insurance, because his license had been revoked.

American also attached the affidavit of Michael Odom, its personal lines manager, to the motion for summary judgment. Odom affirmed that, had the true facts about Mahoney's misrepresentations been known when she applied for insurance, American never would have insured her. In conclusion, American requested that the circuit court find that because Mahoney made material misrepresentations in her application, it had the right to avoid the policy.

On October 27, 1988, Mahoney responded to American's motion for summary judgment. Mahoney argued that Bleile's statement did not comply with Illinois Supreme Court Rule 191 (107 Ill. 2d R. 191), in that it was unsworn. Thus, she concluded, his statement could not be used to support the entry of summary judgment against her. Relying on her affidavit, which had been submitted by American, Mahoney noted that it was uncontradicted that she told her insurance agent she had a roommate who had a car; that the Pontiac was her auto and she relied upon Bleile only to help her with financing; that American never contacted her or made any inquiry of her regarding the alleged misrepresentations; that the insurance application did not request ownership information regarding the insured vehicle; that Bleile was not a licensed operator when the application was made, his license having been revoked; that the insurance agent filled out the application and could have asked follow-up questions; that Bleile's driving record was irrelevant, because he was not involved in the accident and was not residing with her at that time; and that she did not intend to make any misrepresentations. Therefore, according to Mahoney, American was not entitled to summary judgment.

Simultaneously, Mahoney filed a motion to transfer venue to Lake or McHenry County. Mahoney alleged that the subject matter of the complaint was an auto accident which took place in McHenry County, where she was a resident when the accident occurred. Mahoney further alleged that after she was injured in the accident, she was taken to a hospital in Milwaukee and remained there for several weeks. She then came to live

with her mother in Lake County, in order to be nursed. Mahoney concluded that the proper venue was the place of the accident or the defendant's residence.

Mahoney also filed a motion to dismiss, pursuant to section 2—619 of the Illinois Code of Civil Procedure. (Ill. Rev. Stat. 1987, ch. 110, par. 2—619.) Mahoney claimed that she was involved in another accident on January 1, 1988. Jack Ribbens, she continued, was involved in the second accident. Ribbens was a necessary and indispensable party, she concluded, because his property rights were implicated by American's attempt to have her policy declared void.

American filed its second amended complaint on November 22, 1988. American named Ribbens as an additional defendant, alleging that Mahoney breached the insurance contract by not reporting the collision with him.

On November 28, 1988, American responded to Mahoney's venue transfer motion. American stated that its home office and principal place of business were in Cook County. At the time the insurance application was submitted and the policy issued, Mahoney also resided in Cook County. The policy was delivered in Cook County, the subject matter of the policy (the auto) was located primarily in Cook County, and defendant Ribbens was a Cook County resident. American argued that Mahoney waived her objection to venue in Cook County, by not meeting the time limits imposed by section 2—104(b) of the Code of Civil Procedure. (Ill. Rev. Stat. 1987, ch. 110, par. 2—104(b).) In addition, venue was proper in Cook County because American's claim arose out of a Cook County transaction, and because Ribbens—who was only made a defendant at Mahoney's insistence—was a Cook County resident. (See Ill. Rev. Stat. 1987, ch. 110, par. 2—101.) Finally, American maintained that Mahoney asserted nothing which would justify transfer.

On November 28, 1988, American also filed its reply to Mahoney's response to its motion for summary judgment. American contended that Mahoney failed to raise any genuine issues of material fact. Responding to Mahoney's claim that Bleile's statement was not sworn, American noted that the court reporter, who reported the testimony in shorthand and later transcribed it, did certify the statement's veracity. To eliminate any doubts concerning the statement's sufficiency, however, American submitted a duplicate certificate, executed by Bleile, in which he attested that he read the statement and that it was true in substance and in fact.

A hearing on the parties' motions was held on December 6, 1988. The circuit court denied Mahoney's motion to transfer venue from Cook County. Mahoney then argued that the circuit court should abstain from

ruling on the summary judgment motion, as American had a virtually identical motion under advisement by the circuit court of Lake County. American retorted that after it filed suit in Cook County, Mahoney commenced an action in Lake County. Mahoney's lawsuit was primarily concerned with her claim that American wrongfully refused to return her damaged car after its claim investigation. But Mahoney also raised the coverage issues in Lake County. After Mahoney moved for summary judgment in that county on the coverage question, American filed a cross-motion for summary judgment in order to protect its rights. The circuit court of Cook County declined to abstain from ruling on American's motion.

Mahoney then invoked—for the first time—section 143.19 of the Insurance Code (Ill. Rev. Stat. 1987, ch. 73, par. 755.19), asserting that American was impermissibly attempting to retroactively cancel her policy. American responded that it was actually proceeding under section 154 and attempting to rescind the policy. The circuit court then ruled that Mahoney made material misrepresentations of fact, which were sufficient to avoid the policy under section 154.

The circuit court entered a written order on that day, formally denying Mahoney's motion to transfer venue. The circuit court also granted American's motion for summary judgment, on the grounds that Mahoney made material misrepresentations regarding question 4 of the insurance application, quoted above. The circuit court denied American's motion concerning the other alleged misrepresentations. The order provided that it was not final, and the cause was continued for status until December 19, 1988. On that date, the cause was continued until January 4, 1989. On the latter date, American moved for entry of a final order. The circuit court ruled that—pursuant to its order of December 6, 1988—Mahoney's insurance policy was declared null and void from its inception. Mahoney then appealed to this court.

ANALYSIS

THE VENUE ISSUE

■ ■ Mahoney's first argument on appeal is that the circuit court erred in denying her motion to transfer venue from Cook County. Section 2—101 of the Code of Civil Procedure provides:

> "Generally. Except as otherwise provided in this Act, every action must be commenced (1) in the county of residence of any defendant who is joined in good faith and with probable cause for the purpose of obtaining a judgment against him or her and not solely for the purpose of fixing venue in that county, or (2) in the

county in which the transaction or some part thereof occurred out of which the cause of action arose." (Ill. Rev. Stat. 1987, ch. 110, par. 2—101.)

American was not required to plead and prove that its selection of Cook County for the filing of this action was proper. (See *Weaver v. Midwest Towing, Inc.* (1987), 116 Ill. 2d 279, 285, 507 N.E.2d 838, 840.) As the movant, Mahoney had the burden of proving that American's selection of venue was improper; she was required to set forth specific facts, rather than conclusions, and show a clear right to the relief requested. Any doubts arising from the record's inadequacy must be resolved against her. See *Weaver*, 116 Ill. 2d at 285, 507 N.E.2d at 840.

We do not think Mahoney met her burden of showing that venue in Cook County was improper. On the contrary, venue was proper under section 2—101(1) because defendants GMAC and Ribbens were residents of Cook County; the latter, in fact, was only made a defendant after Mahoney moved to dismiss American's amended complaint for failure to join him. Venue was proper under section 2—101(2) because American's cause of action arose out of a Cook County transaction: Mahoney's submission of an insurance application, in which she made the alleged misrepresentations that prompted American to seek declaratory judgment. Mahoney has not cited any authority in this court to support the proposition that Cook County is not a proper venue, and she does not deny the connections to Cook County that American has identified. We cannot say, then, that the circuit court erred in denying her motion to transfer.

THE SUMMARY JUDGMENT ISSUE

■ Mahoney's second argument on appeal is that the circuit court should not have entered summary judgment against her. More specifically, she argues that the circuit court should have abstained from ruling on American's motion for summary judgment; that the circuit court erred in ruling that the Insurance Code's section 154 governed the resolution of the coverage question; that the evidence did not support the entry of summary judgment against her; and that American's renewal of her insurance policy, well before it learned of her misrepresentations, eliminated any right to defeat or avoid the policy. We shall address these points in the foregoing order.

We must reject Mahoney's contention that the circuit court of Cook County abused its discretion by entertaining American's motion for summary judgment while the Lake County circuit court allegedly had its virtually identical summary judgment motion under advisement. This court has stated before that it is the appellant's duty to submit a record sufficient to show the error complained of and that any doubts arising

from an incomplete record shall be resolved against the appellant. (See, *e.g., Kostur v. Indiana Insurance Co.* (1989), 192 Ill. App. 3d 859, 866, 549 N.E.2d 685, 690.) Mahoney has not supplemented the record with the Lake County pleadings; she merely attached copies of them to her brief's appendix. Even if those papers were properly before us, it appears that the Lake County cause has been stayed pending the outcome of this appeal. Moreover, it seems that the Cook County case was filed before the Lake County case, and that American only sought summary judgment on the coverage issue in Lake County via a cross-motion for summary judgment to protect its rights, after Mahoney raised that question in her motion for summary judgment. In light of these circumstances, the Cook County circuit court did not abuse its discretion by refusing to abstain.

■ We now turn to Mahoney's theory that section 154 of the Insurance Code is inapplicable. Section 154 provides:

"Misrepresentations and False Warranties. No misrepresentation or false warranty made by the insured *** in the negotiation for a policy of insurance *** shall defeat or avoid the policy *** unless such misrepresentation *** shall have been stated in the policy *** or in the written application therefor, of which a copy is attached to or endorsed on the policy, and made a part thereof. No such misrepresentation *** shall defeat or avoid the policy unless it shall have been made with actual intent to deceive or materially affects either the acceptance of the risk or hazard assumed by the company." (Ill. Rev. Stat. 1987, ch. 110, par. 766.)

American proceeded under section 154 in its complaint and in its motion for summary judgment, and Mahoney did not challenge that section's applicability until the hearing of December 6, 1988. On that date, Mahoney argued for the first time that section 143.19 governed resolution of the coverage dispute. Section 143.19 states:

"Cancellation of automobile insurance policy—Grounds. After a policy of automobile insurance *** has been effective for 60 days, or if such policy is a renewal policy, the insurer shall not exercise its option to cancel such policy except for one or more of the following reasons:

\*\*\*

b. The policy was obtained through a material misrepresentation." (Ill. Rev. Stat. 1987, ch. 73, par. 755.19.)

The gist of Mahoney's argument seems to be that since American did not discover the alleged misrepresentations within 60 days of issuing the policy, it cannot deny coverage now.

We must conclude, however, that section 154 applies. In one of the

cases cited by Mahoney, the appellate court stated that an insurance policy is "cancelled," and the insurer's act is a "cancellation," when the insurer sends a written notice in which it positively and affirmatively indicates its intention that the policy shall cease to be binding upon the expiration of a stipulated number of days from the time when its intention is made known to the insured. (See *Conley v. Ratayzcak* (1980), 92 Ill. App. 3d 29, 33, 414 N.E.2d 500, 503.) In its letter of June 8, 1988, which American attached to its complaint and which we quoted above, American plainly informed Mahoney that she did not have nor did she ever have insurance as a result of her misrepresentations, and it returned all of the premiums she payed. Thus, American was not attempting to cancel Mahoney's insurance, as that term was defined in *Conley*; instead, American was attempting to defeat or avoid the policy, as contemplated by section 154. By no stretch of the imagination can American's conduct be seen as a cancellation, retroactive or otherwise.

■ Next, Mahoney asserts that the circuit court improperly considered Bleile's statement in ruling upon American's motion for summary judgment. Mahoney objected below, in her response, that his statement did not comply with Supreme Court Rule 191, which provides:

"(a) Requirements. Affidavits in support of *** a motion for summary judgment under section 2—1005 of the Code of Civil Procedure, *** shall be made on the personal knowledge of the affiants; shall set forth with particularity the facts upon which the claim, counterclaim, or defense is based; *** shall not consist of conclusions but of facts admissible in evidence; and shall affirmatively show that the affiant, if sworn as a witness, can testify competently thereto." (107 Ill. 2d R. 191(a).)

American replies that Mahoney has not preserved her objection to the sufficiency of Bleile's statement, because she failed to get the circuit court to rule upon it. (See *Oak Trust & Savings Bank v. Annerino* (1978), 64 Ill. App. 3d 1030, 1032, 381 N.E.2d 1389, 1391 (it is nonmovant's duty to bring Rule 191 objection to circuit court's attention and to preserve ruling thereon; failure to do so waives the objection).) In any event, American responds, where a sworn statement substantially complies with Rule 191(a), it is properly considered in ruling upon a motion for summary judgment. (See *Galinski v. Kessler* (1985), 134 Ill. App. 3d 602, 611-12, 480 N.E.2d 1176, 1183.) Also relying upon *Galinski*, American notes that Mahoney had ample time in which to depose Bleile, if she wished to test the truth of his statements through cross-examination.

In view of these authorities, the circuit court did not err in consid-

ering Bleile's statement. Mahoney failed to preserve her Rule 191(a) objection to his statement by not obtaining a ruling on it. Even if Mahoney had preserved her objection, however, the statement's certification by the court reporter and Bleile substantially complied with the requirements of Rule 191(a). Lastly, we must agree with American that Mahoney was free to depose Bleile, and test his veracity, yet she elected not to do so.

■ With this in mind, we come to Mahoney's assertion that the record does not support the entry of summary judgment against her. The law is clear that a misrepresentation in an application for insurance is a statement of something as a fact which is untrue and affects the risk undertaken by the insurer. (*Garde v. Country Life Insurance Co.* (1986), 147 Ill. App. 3d 1023, 1031, 498 N.E.2d 302, 308.) Whether an applicant's statements are material depends upon whether reasonably careful and intelligent persons would have regarded the facts stated as substantially increasing the chances of the events insured against, so as to cause a rejection of the application. Incomplete answers or failure to disclose material information in response to a question in an application may constitute a material misrepresentation. This is so because the misrepresentation prevents the insurer from adequately assessing the risk involved. (See *Garde*, 147 Ill. App. 3d at 1031, 498 N.E.2d at 308.) An insurance applicant has the duty to act in good faith, and an insurer is entitled to truthful responses so that it may determine whether the applicant meets its underwriting criteria. Accordingly, the applicant must disclose all information and let the insurer determine its materiality. While the materiality of a misrepresentation is ordinarily a question of fact, the question is appropriate for summary judgment if the misrepresentation is of such a nature that all would agree that it is or is not material. See *Garde*, 147 Ill. App. 3d at 1032, 498 N.E.2d at 308.

■ Contrary to Mahoney's claims, the record in this case supports the entry of summary judgment against her. In the first place, we note that she came forward with no evidence in opposition to that submitted by American—even her own affidavit was submitted by American. Indeed, Mahoney has not done so much as answer any of American's complaints. In the second place, following *Garde*, her misrepresentations were material. As previously mentioned, Mahoney answered in her application that no operator of the Sunbird ever had a driver's license suspended and that no driver of the auto had been convicted of driving while intoxicated. Bleile's uncontradicted statement and driving record show that he was an operator of the vehicle, that his license had been revoked frequently, and that he had fre-

quently been convicted of driving under the influence, among other traffic offenses. These misrepresentations alone are sufficient to justify summary judgment, for no reasonable person could deny that they substantially increased the chances of the events insured against.

■ Finally, we reject Mahoney's argument that American's decision to renew her insurance policy, well before it learned of her misrepresentations, eliminated any right to defeat or avoid the policy. Mahoney has not cited authority, and our own research has disclosed no authority, that supports this novel claim. And the text of section 154 imposes no time limitation on the right, which it grants the insurer, to defeat or avoid a policy; that is, section 154 does not prohibit an insurer from seeking to defeat or avoid a policy after the expiration of 60 days, or after it decides to renew a policy, in ignorance of the insured's material misrepresentations. Mahoney's application itself clearly provided that American would rely upon the representations therein when considering whether to renew her policy. Consequently, Mahoney was given notice that her representations would be relied on during the renewal process. Finally, we can reasonably infer from Odom's affidavit that if American had known the truth regarding the misrepresentations made by Mahoney, she would have had no policy for it to renew.

CONCLUSION

Because we have determined that the circuit court properly denied Mahoney's motion to transfer venue from Cook County and that it properly entered summary judgment against her on the coverage issue, we affirm.

Affirmed.

LORENZ and MURRAY, JJ., concur.