ROSIE L. STEWARD, Special Adm'r of the Estate of James Lee Steward, Deceased, Plaintiff-Appellant, v. BERNARD L. CRISSELL *et al.*, Defendants-Appellees.

First District (2nd Division) No. 1—96—2444

Opinion filed June 10, 1997.

Michael D. Gerstein and Melvin A. Weinstein, both of Chicago, for appellant.

Menges, Mikus & Molzahn, of Chicago (Timothy J. Reed and Scott G. Reno, of counsel), for appellees.

JUSTICE McNULTY delivered the opinion of the court:

This case turns on the admissibility of a toxicology report. James Steward died when his car hit a trailer. Rosie Steward, as special administrator of James Steward's estate, sued the trailer's owner and driver for negligence. The trial court admitted into evidence at trial the medical examiner's toxicology report, which showed an alcohol concentration of .162 in Steward's blood. Plaintiff appeals from judgment entered on the jury's verdict for defendants. We, too, find the report admissible under section 115—5.1 of the Code of Criminal Procedure of 1963 (725 ILCS 5/115—5.1 (West 1994)), and therefore we affirm.

Defendant Bernard Crissell drove a truck and trailer for defendant North American Van Lines on January 11, 1992. Heading westbound on 95th Street somewhat after 11 p.m., he saw a sign indicating that the viaduct ahead of him had a clearance of only 12 feet 8 inches. Because his trailer was over 13 feet tall, he realized he needed to turn around. He turned left onto Dorchester, only to find a chain blocking the street. The street led to a business district, and authorities for that district closed that street at 6 o'clock that night. Crissell pulled his truck up to the chain, stopped, and turned on his four-way flashers. His trailer then blocked both eastbound lanes and one of the two westbound lanes. He saw a security pickup truck coming towards him from inside the business district. A few minutes later Crissell heard a loud crash.

Police found Steward dead in his car. The trailer sheared off the

top of the car as the eastbound car passed under the trailer. The car came to a stop 89 feet east of the trailer. The estate charged Crissell and North American Van Lines with negligently blocking the eastbound lanes without placing warnings adequate to give drivers time to react when they discovered the trailer after passing underneath the nearby viaduct.

Before trial plaintiff moved to bar the toxicologist's report and testimony. The trial court denied the motion. Dr. Nancy Wu Chen, chief toxicologist in the Cook County office of the medical examiner, explained department procedures for quantifying toxin levels in samples the department receives from the medical examiner's pathology department. The toxicology department received the samples labeled "James Stewart" at 1:44 p.m. on January 12, 1992. The file numbers matched Steward's files, and the subject's description also matched Steward's description. Dr. Wu Chen did not know when the pathology department drew the samples because her records show only the toxicology department's work. The court overruled plaintiff's objection to the foundation for the exhibit.

On cross-examination Dr. Wu Chen admitted that alcohol concentrations in the blood change somewhat after death, and the readings vary somewhat depending upon the part of the body from which blood is drawn. She knew neither from what part of Steward's body, nor how long after death, the pathologists drew the blood. She said, "that question maybe it should be directed to a pathologist." Defendants' exhibits listed Dr. Deborah Kay as the pathologist who requested the toxicology report. Neither party subpoenaed Dr. Kay to testify.

The parties presented testimony concerning lighting, obstruction of the view for eastbound cars, Steward's speed, and the length of time the trailer remained across the lanes prior to the crash. Plaintiff argued that Crissell could have pulled off the roadway rather than turn left, and he could have put out the warning triangles kept in the truck.

The court instructed the jurors that statutory law forbids driving with a blood-alcohol concentration in excess of .10, and if they found a violation of that statute, they could consider that violation in assessing negligence. The court also told the jurors that if Steward's contributory negligence was more than 50% of the proximate cause of the accident, they should return a verdict for defendants.

■ Plaintiff argues that section 115—5.1 of the Code of Criminal Procedure does not authorize admission of the toxicology report because the alcohol in Steward's blood was not the cause of death. Section 115—5.1 provides:

"In any civil or criminal action the records of the coroner's medical or laboratory examiner summarizing and detailing the performance of his or her official duties in performing medical examinations upon deceased persons or autopsies, or both, and kept in the ordinary course of business ***, duly certified by the *** medical examiner, shall be received as competent evidence in any court of this State, to the extent permitted by this Section. These reports, specifically including but not limited to the pathologist's protocol, autopsy reports and toxicological reports, shall be public documents and thereby may be admissible as prima facie evidence of the facts, findings, opinions, diagnoses and conditions stated therein.

A duly certified coroner's protocol or autopsy report, or both, complying with the requirements of this Section may be duly admitted into evidence as an exception to the hearsay rule as prima facie proof of the cause of death of the person to whom it relates. The records referred to in this Section shall be limited to the records of the results of post-mortem examinations of the findings of autopsy and toxicological laboratory examinations.

Persons who prepare reports or records offered in evidence hereunder may be subpoenaed as witnesses in civil or criminal cases upon the request of either party to the cause." 725 ILCS 5/115—5.1 (West 1994).

The argument in this case centers on the legislature's intention in restricting admissibility to "the extent permitted by this Section." 725 ILCS 5/115—5.1 (West 1994).

■ As the statute itself indicates, the medical examiner's records are "public documents" "kept in the ordinary course of business." 725 ILCS 5/115—5.1 (West 1994). As such they appear to be generally admissible under common law hearsay exceptions for public documents and business records, in the absence of the statute. See *In re Estate of Ersch*, 29 Ill. 2d 572, 578, 195 N.E.2d 149 (1963). Public documents are generally admissible because of "the inconvenience to the public official in requiring him to testify, the trustworthiness of one charged with a public duty, and the fact that there is no motive for falsifying or misrepresenting." *People v. Fair*, 61 Ill. App. 2d 360, 366, 210 N.E.2d 593 (1965). The advisory committee commenting on the public documents exception embodied in Federal Rule of Evidence 803(8) also noted that the documents reflecting regularly conducted governmental activities are made reliable "by systematic checking, by regularity and continuity which produce habits of precision, by actual experience of business in relying upon them, or by a duty to make an accurate record." Fed. R. Evid. 803, Advisory Committee's Note.

Accordingly, public documents produced by coroners and county medical examiners were generally admissible in evidence until our supreme court decided *Spiegel's House Furnishing Co. v. Industrial Comm'n*, 288 Ill. 422, 123 N.E. 606 (1919). In that case the plaintiff sought to recover worker's compensation from her dead husband's employer. The trial court admitted into evidence the verdict of the coroner's jury, which found that the decedent received the fatal wound while working on his employer's property. Our supreme court noted that the coroner's jury based its verdict solely on hearsay testimony concerning statements the decedent made about the injury, and the employer had no right to appear or present evidence to the coroner's jury. *Spiegel's*, 288 Ill. at 425-26. Even a judicial finding against an unrepresented party would not have a preclusive effect in a subsequent trial; the court reasoned that the quasi-judicial findings of a coroner's jury should have less effect. *Spiegel's*, 288 Ill. at 432. The court held:

> "[I]t should be no longer *** that a coroner's verdict or inquest should be admissible as evidence in civil suits for the purpose of establishing personal liability against any individual in cases where the death of any person is charged or to establish a defense to such a suit, or for the purpose of establishing other issues between private litigants." *Spiegel's*, 288 Ill. at 430.

The committee on the federal rules noted problems similar to those that led to the holding in *Spiegel's*. When a public record includes an evaluative report, which may rely on inadmissible hearsay, like the coroner's verdict on cause of death, its admissibility is problematic. Fed. R. Evid. 803, Advisory Committee's Note. Police reports are generally inadmissible in part because they largely summarize hearsay from persons not under oath telling the police what they saw. Annotation, *Admissibility of Report of Police or Other Public Officer or Employee, or Portions of Report, as to Cause of or Responsibility for Accident, Injury to Person, or Damage to Property*, 69 A.L.R.2d 1148, 1151 (1960). Some reports include the officer's non-expert opinion on such matters as the cause of an accident. 69 A.L.R.2d at 1151-52.

However, police reports may also include statements of facts the officer observed.

> "An example is such a statement as that the skidmarks at the scene of the accident were 75 feet in length. Such an item *** should, so far as the hearsay rule is concerned, be admissible in evidence ***.
>
> ***
>
> In other words, those portions of a public officer's report relat-

ing to the cause of or responsibility for an accident, injury, or damage may constitute statements of fact or they may represent a mere opinion or conclusion, and it would seem that a statement appearing in such a report relating to the cause of or responsibility for an accident or injury would properly be admitted in evidence if (1) it constituted a statement of fact, as distinguished from an opinion or conclusion, and (2) it represented the personal observations of the reporter, not a relaying of what someone else had told him." 69 A.L.R.2d at 1151-52.

In *Carson v. Metropolitan Life Insurance Co.*, 156 Ohio St. 104, 100 N.E.2d 197 (1951), the trial court admitted into evidence a coroner's report under a statute that made the coroner's records admissible as evidence "as to the facts therein contained." *Carson*, 156 Ohio St. at 111, 100 N.E.2d at 201. The supreme court of Ohio held that the trial court properly admitted the report as evidence of such facts as the decedent's age and the description of the fatal wound. However, the report also reflected the coroner's conclusion that the decedent killed himself. The court noted that courts of other states divided on the issue of whether coroners' opinions as to cause of death constituted statements of fact under similar statutes. *Carson*, 156 Ohio St. at 112, 100 N.E.2d at 202. The court held that the coroner's conclusion constituted an inadmissible opinion. *Carson*, 156 Ohio St. at 113, 100 N.E.2d at 203; see *People v. Fiddler*, 45 Ill. 2d 181, 185, 258 N.E.2d 359 (1970).

Illinois statutes directly address the question that the Ohio court faced. The General Assembly adopted the holding of *Spiegel's* and the statute remains in effect. 735 ILCS 5/8—2201 (West 1994). Until 1982 the legislature also made the coroner's toxicology reports inadmissible in civil trials, but the legislature then eliminated the statute specifically restricting use of toxicology reports and added a provision to "An Act in regard to evidence and depositions" (Evidence Act) (Ill. Rev. Stat. 1981, ch. 51, pars. 3.01 through 3.03), explicitly making such reports admissible in civil proceedings. See *Schantz v. Hodge-VonDeBur*, 113 Ill. App. 3d 950, 951-52, 447 N.E.2d 1355 (1983).

Section 115—5.1 recodifies sections 3.01 through 3.03 of the Evidence Act. Section 3.01 provided:

"In any civil or criminal action the records of the coroner's medical or laboratory examiner summarizing and detailing the performance of his official duties in performing medical examinations upon deceased persons or autopsies, or both, and kept in the ordinary course of business ***, duly certified by the *** medical examiner, shall be received as competent evidence in any court of this State, to the extent permitted by Section 3.03. These reports, specifically including but not limited to the pathologist's protocol,

autopsy reports and toxicological reports, shall be public documents and thereby may be admissible as prima facie evidence of the facts, findings, opinions, diagnoses and conditions stated therein." Ill. Rev. Stat. 1981, ch. 51, par. 3.01.

Section 3.02 permitted the limited use of a coroner's protocol or autopsy report to show cause of death. Ill. Rev. Stat. 1981, ch. 51, par. 3.02. Section 3.03 established that either party to a civil case had a right to subpoena as witnesses any persons who prepared the reports. Thus the restriction on use "to the extent permitted by Section 3.03" meant that none of the reports were admissible if the preparers failed to respond to subpoena or were otherwise unavailable for examination by any party who sought to examine them. See *Affatato v. Jewel Cos.*, 259 Ill. App. 3d 787, 795-96, 632 N.E.2d 137 (1994). The section established special procedures for admission of reports prepared by persons since deceased. Ill. Rev. Stat. 1981, ch. 51, par. 3.03 (now 725 ILCS 5/115—5.1 (West 1994)).

■ We find that the restriction to use "to the extent permitted by this Section" (725 ILCS 5/115—5.1 (West 1994)) retains the meaning it had when enacted in three separate sections. The statements of relevant and material facts in certified records of the coroner or medical examiner, kept in the ordinary course of business, are all admissible in evidence, as long as the preparers of the reports are available for examination upon the request of either party. Such admissible facts include measurements of the scene, descriptions of the wounds, and medical reports, including toxicology reports, concerning the deceased. Assessments of the cause of death have more limited admissibility: the coroner's verdict, concerning the cause and material circumstances surrounding the death (see 55 ILCS 5/3—3025 (West 1994)), is entirely inadmissible in all civil proceedings for damages. 735 ILCS 5/8—2201 (1994). Only the coroner's protocol or autopsy report is admissible as evidence of the cause of death, again providing that the preparer is available by subpoena for examination. Section 115—5.1 renders the toxicology report here admissible.

Plaintiff claims that the court should not have admitted the report because the pathologist drew the blood under an unconstitutional statute, section 11—501.6 of the Illinois Vehicle Code (625 ILCS 5/11—501.6 (West 1992)). The pathologist drew the blood pursuant to section 3—3013 of the Counties Code (55 ILCS 5/3—3013 (West 1992)), which requires withdrawal of a blood specimen from all deceased car drivers in cases of accidental death involving motor vehicles. Plaintiff raises no constitutional objection to this statute. The unconstitutionality of section 11—501.6 of the Illinois Vehicle Code is simply irrelevant to this case.

Plaintiff asserts that defendants here failed to present a complete foundation for the introduction of the toxicology report, in that defendants did not prove full compliance with all procedures prescribed by section 3—3013, and defendants presented no other evidence of Steward's intoxicated behavior. As the court pointed out in *Wade v. City of Chicago Heights*, 216 Ill. App. 3d 418, 431-38, 575 N.E.2d 1288 (1991), section 11—501(a)(1) of the Vehicle Code specifically proscribes driving with a blood-alcohol concentration in excess of .10 (625 ILCS 5/11—501(a)(1) (West 1992)), and evidence that a driver violated that statute is admissible evidence of negligence even without evidence of intoxication. Defendants did not need evidence of intoxication as a prerequisite for admission of the toxicology report. The trial court correctly instructed jurors to consider evidence of the statutory violation in assessing negligence. *Wade*, 216 Ill. App. 3d at 437-38.

Defendants did not prove that the pathologist drew Steward's blood within six hours of his death, although the Counties Code instructs coroners to draw blood for toxicological testing within that time. 55 ILCS 5/3—3013 (West 1992). The sole witness from the medical examiner's office did not know when the pathologist drew the blood.

■ Courts generally allow public records into evidence based in part on the presumption that public officials, with no motive to falsify records, will perform their assigned duties properly. *Department of Conservation v. First National Bank*, 36 Ill. App. 3d 495, 504, 344 N.E.2d 11 (1976); M. Graham, Cleary & Graham's Handbook of Illinois Evidence § 803.12, at 663 (5th ed. 1990). To overcome this presumption, the party challenging such records has the burden of presenting evidence to show that the records are unreliable. *People v. Graney*, 234 Ill. App. 3d 497, 503, 599 N.E.2d 574 (1992); M. Graham, Cleary & Graham's Handbook of Illinois Evidence § 803.12, at 663 (5th ed. 1990).

■ Plaintiff here did not meet the burden of showing a statutory violation that might cast doubt on the reliability of the records. Plaintiff did not even exercise the right to subpoena Dr. Kay, the pathologist who requested the toxicology report, to determine whether pathologists drew the blood within the statutorily required six hours. The minor discrepancy between the name on the toxicology request, James Stewart, and the name of the deceased, is not sufficient to cast doubt on the procedures used or the relevance of the report, especially because James Stewart had the same file number and description as deceased here.

Section 115—5.1 establishes special requirements for determin-

ing admissibility of the public documents at issue here. The section requires certification of the record, which the medical examiner must keep in the ordinary course of business, and the record's preparer must be available to either party by subpoena. Since defendants met the foundational requirements for this relevant evidence, and plaintiff presented no evidence to show the medical examiner failed to use the appropriate procedures, the trial court correctly admitted the toxicology report into evidence.

■ Finally, plaintiff complains about remarks defense counsel made in closing argument. Defense counsel said, "Counsel went into this routine of—." When plaintiff objected, defense counsel offered to rephrase:

"Counsel then suggested to Mr. Crissell, well you should have [gone] to the right ***. You should have performed some type of a zigzag maneuver to get back to the other side.

I put to you, ladies and gentlemen, that Counsel was not in the cab of the truck that night. Mr. Crissell was in the cab of that truck, and he made a decision that he could not perform any of these alternate *** maneuvers in order to prevent himself from blocking that roadway.

*** *** ***

*** Counsel mentioned that Mr. Crissell was not properly trained on the placement of triangles. *** And then Counsel did a maneuver. He put them together in 30 seconds. Putting together the triangles in 30 seconds in your cab doesn't do it, folks. *** You [have] to place them out."

The comments did not egregiously mischaracterize plaintiff's arguments or amount to a personal attack on plaintiff's attorney. See *Lewis v. Cotton Belt Route—St. Louis Southwestern Ry. Co.*, 217 Ill. App. 3d 94, 121, 576 N.E.2d 918 (1991). The comments were not so inappropriate as to fall outside the bounds of fair response to the arguments plaintiff raised. See *Coffey v. Hancock*, 122 Ill. App. 3d 442, 451, 461 N.E.2d 64 (1984).

For the reasons stated above, we affirm the judgment of the trial court.

Affirmed.

RAKOWSKI and TULLY, JJ., concur.