# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *Village of Arlington Heights v. Anderson*, 2011 IL App (1st) 110748

---

| | |
|---|---|
| Appellate Court Caption | VILLAGE OF ARLINGTON HEIGHTS, an Illinois Municipal Corporation, Plaintiff-Appellee, v. MARK R. ANDERSON, B. GREGORY TRAPANI, JORDAN KAISER, WALTER KAISER, and VILLAGE GREEN, LLC, Defendants-Appellants. |
| District & No. | First District, Second Division<br>Docket No. 1-11-0748 |
| Filed | December 20, 2011 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | On appeal from the entry of summary judgment for plaintiff village finding that defendants were jointly and severally liable on a note defendants executed to personally guarantee that the net incremental taxes actually received by the village in connection with a TIF project undertaken by defendants would not be less than the projected net incremental taxes, the appellate rejected defendants' contentions that the public documents used in calculating the amounts defendants owed lacked a proper foundation and that a genuine issue of material fact existed as to whether defendants agreed to guarantee the taxes annually or through the life of the TIF project. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 08-CH-16359; the Hon. Kathleen Pantle, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Voelker Litigation Group, of Chicago (Daniel J. Voelker, of counsel), for appellants.

Holland & Knight LLP, of Chicago (Jack M. Siegel, of counsel), for appellee.

Panel

JUSTICE HARRIS delivered the judgment of the court, with opinion.

Presiding Justice Quinn and Justice Cunningham concurred in the judgment and opinion.

**OPINION**

¶ 1    Defendants-appellants Mark R. Anderson, B. Gregory Trapani, Jordan Kaiser, Walter Kaiser, and Village Green, LLC (collectively referred to as Village Green), appeal the order of the circuit court granting the motion of plaintiff-appellee Village of Arlington Heights (Arlington Heights) for partial summary judgment on count I of Arlington Height's complaint for declaratory judgment and accounting. The trial court found that pursuant to a $350,000 note signed by the four named Village Green defendants, they jointly and severally owed Arlington Heights $290,375 plus interest. On appeal, Village Green contends the trial court erred in granting summary judgment in favor of Arlington Heights where: (1) it admitted as evidence the Cook County treasurer reports, equalized assessed value of the Village Green parcels, and sales tax receipts, all of which lacked a valid foundation; and (2) a genuine issue of material fact existed as to whether Village Green agreed to guarantee the net incremental taxes annually or through the life of the redevelopment project. We affirm.

¶ 2                                     JURISDICTION
¶ 3    The trial court entered partial summary judgment in favor of plaintiff on September 1, 2010. On February 15, 2011, it entered a final judgment in the case, and defendants filed a notice of appeal on March 10, 2011. Accordingly, this court has jurisdiction pursuant to Illinois Supreme Court Rules 301 and 303 governing appeals from final judgments entered below. Ill. S. Ct. R. 301 (eff. Feb. 1, 1994); R. 303 (eff. May 30, 2008).

¶ 4                                     BACKGROUND
¶ 5    Arlington Heights sought to redevelop an area of the village under the Illinois Tax Increment Allocation Redevelopment Act (TIF Act) (65 ILCS 5/11-74.4-1 *et seq.* (West 2006)). Arlington Heights selected Village Green as the exclusive developer of the project, and on November 3, 1997, the parties executed the redevelopment agreement (RDA). The second amendment to the RDA required the Village Green defendants to execute a note

which provided that by delivering the $350,000 note attached to the amendment:

> "Developer will cause [defendants] B. Gregory Trapani, Mark R. Anderson, Jordan Kaiser, and Walter Kaiser *** to personally guarantee to [Arlington Heights] *** through the life of the TIF, December 31, 2006, that the net incremental taxes actually received or to be received for the project are not less than the projected net incremental taxes, pursuant to the revised Analysis of Incremental Tax Revenues, attached hereto as the revised Exhibit C to the Original Agreement. Beginning on December 1, 2002, and each December 1 thereafter, to and including December 1, 2006, [Arlington Heights] will analyze the net incremental taxes attributable to the Project, *** and, if the net incremental taxes are less than the projected net incremental taxes, as calculated by the revised Analysis of Incremental Tax Revenues, [defendants] shall pay annually to [Arlington Heights], within thirty (30) days after notification by [Arlington Heights] (along with a schedule of computations) *** the deficiency amount."

The parties signed the note on August 17, 1998. The projected net incremental taxes, attached to the note as Exhibit C, were modified in the fourth amendment to the RDA.

¶ 6     Pursuant to the agreement and note, Arlington Heights advanced to Village Green $5,750,000 for TIF-eligible costs. The funds came from a bond issue for $4,500,000 and $1,250,000 borrowed from the general fund. In order to pay the principle and interest on the bonds, Arlington Heights needed to receive the projected amount of net incremental tax revenues on an annual basis. The parties amended the note four times to accommodate time extensions for completion, and the extensions resulted in a deficit of incremental taxes for tax years 2003 and 2004 compared to the projected amounts. Arlington Heights charged its community development director, William Enright, with calculating the net incremental taxes. His computations, based on data from the county treasurer's office and Illinois Department of Revenue, indicated the deficit was $111,694 for tax year 2003, and $119,787 for tax year 2004. In August, 2005, Arlington Heights notified Village Green of the deficits and the amounts due pursuant to the note.

¶ 7     On May 2, 2008, Arlington Heights filed a two-count complaint against Village Green for declaratory judgment and accounting. In deciding Arlington Heights' motion for partial summary judgment, the trial court limited the issue to "whether the annual calculation [Arlington Heights] was required to perform pertained to the life of the entire redevelopment project, or for the individual year in which the calculation occurred." In its amended order dated September 29, 2009, the trial court determined that the note contemplated that calculations would be made, and deficits thereby paid, annually. After the order, more discovery between the parties ensued and Arlington Heights provided an explanation of the deficits and a corresponding spreadsheet.

¶ 8     Arlington Heights filed a second motion for partial summary judgment on June 10, 2010. Attached to the motion was the affidavit of Enright, explaining that he relied on the county treasurer's reports in making his calculations. Also attached were the treasurer's reports and a spreadsheet prepared by Enright showing the deficits in tax years 2003 and 2004. In its order of September 1, 2010, the trial court noted that it had previously ruled that calculations would be made, and deficits paid, annually. The court then determined that the treasurer's

reports are public records admissible as an exception to the hearsay rule, and that the evidence supported Enright's calculations. It granted the motion for partial summary judgment, finding the Village Green defendants jointly and severally liable for $290,375 pursuant to the note. Upon Arlington Heights' motion for entry of judgment order and withdrawal of count II of its complaint, the trial court made the order a final judgment. Village Green filed this timely appeal.

¶ 9                                    ANALYSIS

¶ 10    A motion for summary judgment is granted only if the pleadings, depositions and admissions on file, together with any affidavits, reveal no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Purtill v. Hess*, 111 Ill. 2d 229, 240 (1986). "If a party moving for summary judgment supplies facts which, if not contradicted, would entitle such party to a judgment as a matter of law, the opposing party cannot rely on his pleadings alone to raise issues of material fact." *Purtill*, 111 Ill. 2d at 240-41. For purposes of the summary judgment motion, facts contained in an affidavit are admitted as true if not contradicted by a counteraffidavit or other evidentiary material. *Fields v. Schaumburg Firefighters' Pension Board*, 383 Ill. App. 3d 209, 224 (2008). We review the trial court's grant of summary judgment *de novo*. *Fields*, 383 Ill. App. 3d at 223.

¶ 11    An affidavit sufficient to support a motion for summary judgment "shall be made on the personal knowledge of the affiant[ ]; shall set forth with particularity the facts upon which the claim, counterclaim, or defense is based; shall have attached thereto sworn or certified copies of all papers upon which the affiant relies; shall not consist of conclusions but of facts admissible in evidence; and shall affirmatively show that the affiant, if sworn as a witness, can testify competently thereto." Ill. S. Ct. R. 191(a) (eff. July 1, 2002).

¶ 12    Attached to Arlington Heights' motion was the affidavit of Enright. In his affidavit, Enright stated that as acting deputy director of planning and community development for Arlington Heights, he was familiar with the project at issue. He was charged with computing the actual incremental tax revenues (from both real estate and sales taxes) each year in order to determine Village Green's liability, if any, pursuant to the note. He stated that each year the county treasurer submits reports to Arlington Heights reflecting the assessed valuation and tax due for each tax parcel within the district relevant to the project. The reports for tax years 1999 through 2005 were attached as Exhibit C and had previously been transmitted to Village Green upon a document request. From the data in the reports, Enright ascertained the equalized assessed value of the Village Green parcels and computed the net incremental real estate taxes. He also determined the amount of annual sales taxes using confidential data provided to Arlington Heights by the Illinois Department of Revenue. He prepared a spreadsheet, attached to the motion as Exhibit I, reflecting his computations and the deficits in net incremental tax revenue for tax years 2003 and 2004. He outlined his methodology in the affidavit. The affidavit further stated that Enright based his calculations on the agreed-upon projections in the note and the official records of the county treasurer.

¶ 13    Generally, a document offered for the truth of the matter asserted is inadmissible as hearsay. *People v. Graney*, 234 Ill. App. 3d 497, 506 (1992). However, public documents

kept in the ordinary course of business are generally admissible as exceptions to the hearsay rule due to " 'the inconvenience to the public official in requiring him to testify, the trustworthiness of one charged with a public duty, and the fact that there is no motive for falsifying or misrepresenting.' " *Steward v. Crissell*, 289 Ill. App. 3d 66, 69 (1997) (quoting *People v. Fair*, 61 Ill. App. 2d 360, 366 (1965)). The Illinois Rules of Evidence also provide for the admission of reports which must be compiled in performance of a public agency's duties. Ill. R. Evid. 803(8) (eff. Jan. 1, 2011). Such "documents reflecting regularly conducted governmental activities are made reliable 'by systematic checking, by regularity and continuity which produce habits of precision, by actual experience of business in relying upon them, or by a duty to make an accurate record.' " *Steward*, 289 Ill. App. 3d at 69 (quoting Fed. R. Evid. 803 advisory committee notes).

¶ 14    The county treasurer reports are public records "maintained by public officials or employees in connection with the performance of their official duties." *Barker v. Eagle Food Centers, Inc.*, 261 Ill. App. 3d 1068, 1074 (1994). The proponent of a public record lays an adequate foundation for admission of the evidence when he or she establishes that the document is reliable and accurate. *Graney*, 234 Ill. App. 3d at 506. Here, Arlington Heights laid a proper foundation to establish the reliability of the public records. Enright stated in his affidavit that he is employed by the village of Arlington Heights and that Arlington Heights annually receives reports from the county treasurer detailing tax revenue information. He further stated that he is familiar with the Village Green development project, and in his capacity as community development director, he was charged with calculating the yearly incremental tax revenues of the project. In order to do so, he used data from the county treasurer reports and confidential sales tax information provided by the Department of Revenue. There is no indication that the county treasurer or Department of Revenue provided unreliable information. Also, Village Green did not provide counteraffidavits or otherwise present facts challenging any of the figures Enright relied upon or his methodology. "[F]acts contained in an affidavit in support of a motion for summary judgment which are not contradicted by counteraffidavit are admitted and must be taken as true for purposes of the motion." *Purtill v. Hess*, 111 Ill. 2d 229, 241 (1986). Rather than state facts to dispute Enright's affidavit, Village Green in its response merely speculated about different interpretations concerning the numbers, symbols, and notations in the documents. Even if they had been contained in an affidavit, Village Green's speculative allegations could not survive the motion for summary judgment. See *Emerson Electric Co. v. Aetna Casualty & Surety Co.*, 281 Ill. App. 3d 1080, 1089 (1996).

¶ 15    Village Green argues that Arlington Heights did not lay an adequate foundation to admit the computer-generated county treasurer reports and sales tax figures Enright relied on in making his computations. It contends a proper foundation requires that a representative from either the Cook County treasurer or the Cook County clerk vouch for the computerized documents. In a motion for summary judgment, it is the nonmoving party's duty to bring any objections to the sufficiency of an affidavit to the trial court's attention for a ruling thereon. *American Country Insurance Co. v. Mahoney*, 203 Ill. App. 3d 453, 462 (1990). Failure to do so results in waiver of the objection on appeal. *Mahoney*, 203 Ill. App. 3d at 462. Although Village Green did challenge Enright's affidavit in the trial court proceedings, it

never argued that the affidavit was insufficient because it relied on records generated by a computer without laying the proper foundation for their admission. Theories not raised during summary judgment proceedings are waived on review. *Cochran v. George Sollitt Construction Co.*, 358 Ill. App. 3d 865, 873 (2005) (citing *Sasser v. Alfred Benesch & Co.*, 216 Ill. App. 3d 445, 452 (1991)).

¶ 16    Even on the merits, we are not persuaded by Village Green's argument that a proper foundation to admit governmental computer-generated records is lacking. To the contrary, the county treasurer reports were generated annually by a governmental entity as part of its regularly conducted activities. Illinois Rule of Evidence 803(8) provides:

> "The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
>
> > [r]ecords, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (A) the activities of the office or agency, or (B) matters observed pursuant to duty imposed by law as to which matters there was a duty to report, excluding, however, police accident reports and in criminal cases medical records and matters observed by police officers and other law enforcement personnel, unless the sources of information or other circumstances indicate lack of trustworthiness." Ill. R. Evid. 803(8) (eff. Jan. 1, 2011).

¶ 17    Prior to the adoption of the Illinois Rules of Evidence, Illinois Supreme Court Rule 236 recognized both business records and public records as exceptions to the hearsay rule in civil cases. Article 115 of the Code of Criminal Procedure of 1963 (725 ILCS 5/ art. 115 (West 2008)) did the same in criminal cases. While Rule 803(8) is new, the legal principles behind it are not. In *People v. Turner*, 233 Ill. App. 3d 449, 452 (1992), this court held:

> "The requirements for admitting public records as an exception to the hearsay rule are that the record is made in the ordinary course of business and is authorized by statute, rule, or regulation, or required by the nature of the public office."

¶ 18    Rule 803(8) makes no distinction between public records and computerized public records. Federal Rule of Evidence 901(b)(7) provides that evidence of public records may be authenticated by producing "Evidence that: (A) a document was recorded or filed in a public office as authorized by law; or (B) a purported public record or statement is from the office where items of this kind are kept." Fed. R. Evid. 901(b)(7). The "Notes" for (b)(7) provide: "Public records are regularly authenticated by proof of custody, without more. *McCormick*, § 191; 7 *Wigmore* §§ 2158, 2159. The example extends the principle to include data stored in computers and similar methods, of which increasing use in the public records area may be expected. See California Evidence Code §§ 1532, 1600." Fed. R. Evid. 901(b)(7) advisory committee notes (example 7).

¶ 19    The admissibility of computer records relating to real estate tax assessments is also not a new concept. In *Ed Guth Realty, Inc. v. Gingold*, 315 N.E.2d 441 (N.Y. 1974), the petitioner contested the alleged over-assessment of his commercial property by offering computer printouts which supported the state real property tax equalization rate. In affirming the admissibility of the printouts, the court held "the business entry exception to the hearsay rule is based on the concept of routineness. The routineness of the entry in the usual course

-6-

of business tends to guarantee truthfulness because of the absence of motivation to falsify. Certainly, compiling and feeding data into a computer in the context we have before us would seem to be as routine a function as could be imagined and should be included under [the business entry rule]." *Gingold*, 315 N.E.2d at 446.

¶ 20 As discussed above, there is no indication that the public records relied upon in the instant case were unreliable or inaccurate. In addition, the TIF Act requires that a municipality utilizing TIF funding compute the incremental revenues generated pursuant to the statute. See 65 ILCS 5/11-74.4-8a (West 2006). Thus, Enright was required by law to compute the incremental tax revenues. His affidavit detailing his computations and methodology is proper foundation for the public, computer-generated records and sufficient to support Arlington Heights' motion for summary judgment.

¶ 21 Village Green's final contention is that the trial court erroneously granted summary judgment where a genuine issue of material fact exists. In executing the note, the Village Green defendants agreed to personally guarantee through the life of the project that the net incremental taxes actually received or to be received for the project would not be less than the projected net incremental taxes. It argues that the contract is ambiguous because although the note specifically states that Village Green "shall pay annually" any deficits in net incremental taxes, its terms can also be interpreted to mean that Village Green is liable for only deficits as calculated at the end of the entire project.

¶ 22 "The primary goal of contract interpretation is to give effect to the parties' intent by interpreting the contract as a whole and applying the plain and ordinary meaning to unambiguous terms." *Joyce v. DLA Piper Rudnick Gray Cary LLP*, 382 Ill. App. 3d 632, 636-37 (2008). Language in a contract is not ambiguous merely because the parties disagree as to its interpretation. *Lavelle v. Dominick's Finer Foods, Inc.*, 227 Ill. App. 3d 764, 768 (1992). Disagreement as to interpretation must be reasonable, and this court "will not strain to find an ambiguity where none exists." *Hobbs v. Hartford Insurance Co. of the Midwest*, 214 Ill. 2d 11, 17 (2005). We review the issue of contract ambiguity under the *de novo* standard. *Cincinnati Insurance Co. v. Gateway Construction Co.*, 372 Ill. App. 3d 148, 151 (2007).

¶ 23 Although the note states that Village Green guarantees the net incremental taxes through the life of the project, it specifically outlines the procedure used to determine the liability and for payment of any deficiencies: "Beginning on December 1, 2002, and *each* December 1 thereafter, to and including December 1, 2006, [Arlington Heights] will analyze the net incremental taxes attributable to the Project, *** and, if the net incremental taxes are less than the projected net incremental taxes, as calculated by the revised Analysis of Incremental Tax Revenues, [defendants] *shall pay annually* to [Arlington Heights], within thirty (30) days after notification by [Arlington Heights] (along with a schedule of computations) *** the deficiency amount." (Emphases added.) The unambiguous language of the note indicates that the deficiencies, if any, will be calculated annually each December 1, and that Village Green "shall pay annually *** the deficiency amount." This court "will not strain to find an ambiguity where none exists." *Hobbs*, 214 Ill. 2d at 17.

¶ 24 It is undisputed that Anderson, Trapani, and Jordan and Walter Kaiser signed the note

-7-

that was part of the second amendment to the RDA. They personally guaranteed that the net incremental taxes actually received would not be less than the projected amount of incremental taxes for the project. The parties agreed to the projections in the fourth amendment to the RDA. Enright's affidavit set forth his computations of the net incremental taxes and showed deficits in tax years 2003 and 2004. Although notified of the deficits, Village Green did not make any payments to Arlington Heights. Furthermore, in its response to the motion for summary judgment Village Green did not offer any counteraffidavit or present other facts challenging Enright's computations. Summary judgment in favor of Arlington Heights was proper.

¶ 25     For the foregoing reasons, the judgment of the circuit court is affirmed.

¶ 26     Affirmed.